Connie NORTON, Appellee,

v.

ADAIR COUNTY, Adair County
Sheriff's Department, Fred
Skellenger, Defendants,

International Brotherhood of Teamsters,
Chauffeurs, Warehousemen, and Help-
ers of America, Defendant, and Local
147, Appellant.

No. 88–283.

Supreme Court of Iowa.

May 17, 1989.

Rehearing Denied June 8, 1989.

Neil A. Barrick of the Barrick Law Office, Des Moines, for appellant.

Thomas Mann, Jr., of Mann & Mann, Des Moines, for appellee.

Russell L. Samson, F. Richard Lyford, and Richard T. Anderson of Dickinson, Throckmorton, Parker, Mannheimer & Raife, P.C., Des Moines, for defendants Adair County, Adair County Sheriff's Dept., and Fred Skellenger.

Amy J. Mills, Des Moines, for amicus curiae Iowa Public Employment Relations Bd.

Gerald L. Hammond of Sayre & Gribble, P.C., Des Moines, for amicus curiae Iowa State Educ. Ass'n.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, LAVORATO, and ANDREASEN, JJ.

LAVORATO, Justice.

The plaintiff, Connie Norton, filed a civil action against her former employer, Adair County; the Adair County Sheriff's Department; Sheriff Fred Skellenger; the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America; and Local No. 147. The suit arose out of Skellenger's termination of Norton's employment and the Local's subsequent handling of her union grievance against Adair County, the Adair County Sheriff's Department, and Skellenger. (Unless separately referred to, we collectively refer to the latter three as the County.) After several pretrial rulings adverse to Norton, the case ultimately went to the jury against the Local only. The jury returned a verdict of $25,000 against the Local.

Following several posttrial motions adverse to the Local, it appealed. The appeal was followed by Norton's cross-appeal.

We affirm on both the appeal and cross-appeal.

## I. *Background Facts and Proceedings.*

In July 1979 Norton was appointed by Adair County Sheriff Don Carrick to a part-time clerical position of jailer/dispatcher in the sheriff's department. In the fall of 1984 Norton's position became full-time.

Skellenger was elected Adair County Sheriff in November 1984 and took office the following January 1.

On May 9, 1985, Skellenger gave Norton a written notification that her employment was terminated. At the time, a collective bargaining agreement was in existence between the sheriff's department, as employer, and the International and the Local, as union representatives of the department's employees. Norton was a dues-paying member of the Local.

The collective bargaining agreement contained a grievance and arbitration procedure. Pursuant to this procedure, the Local, on Norton's behalf, delivered a written grievance to the sheriff, contending that the termination violated article 4 of the agreement. Article 4 prohibited discharge of an employee without proper cause.

On May 24 Skellenger denied Norton's grievance, asserting that the agreement had not been violated. According to article 6 of the agreement, the Local then had seventy-two hours after the denial to request arbitration. Failure to request arbitration within this time frame constituted, under article 6, a waiver of arbitration. Such a failure was also deemed a settlement of the grievance on the basis of the employer's last answer.

The Local did not request arbitration within the seventy-two hour period, although Norton wanted her grievance pursued. Thereafter, the Local attempted to reach a settlement with the County but was unsuccessful.

In October 1985 Norton sought legal advice about the Local's failure to pursue her grievance. Nothing further occurred until August 1986, at which time the Local attempted to pursue Norton's grievance to arbitration. Norton, however, declined to enter arbitration, opting to pursue this lawsuit on August 5, 1986.

Norton's suit contained four divisions. Three divisions asserted causes of action against the County for wrongful termination based on three different theories: (1) breach of contract, (2) interference with contractual relations, and (3) violation of 42 U.S.C. section 1983. The other division asserted a cause of action against the International and the Local on the grounds that both labor union defendants had breached a duty of fair representation.

Norton attempted to obtain jurisdiction over the International by serving the Local's vice president. When the International did not defend, Norton filed a motion for a default judgment against the International, which was denied during trial.

Before trial Norton sought to amend her petition to allege punitive damages. The motion was granted.

Following discovery, all parties moved for summary judgment. The court granted the County's motion but denied Norton's and the Local's. Thereafter, the case went to trial against the Local, and the jury returned a verdict in favor of Norton.

After trial, the Local filed a motion for judgment notwithstanding the verdict, and Norton filed a motion for attorney's fees. Both motions were denied. This appeal and cross-appeal followed.

## II. *The Local's Appeal.*

The Local assigns four errors in its appeal. It contends the district court erred by (1) overruling its motion for summary judgment, (2) overruling its motion for judgment notwithstanding the verdict, (3) overruling its objections to certain evidence during trial, and (4) refusing its requested jury instruction. We consider each assignment separately.

A. *Motion for summary judgment.* The Local based its motion for summary judgment on two grounds. First, it claimed the district court lacked jurisdiction. Second, it claimed the action was barred by the statute of limitations.

Summary judgment may be properly granted only when there is no issue of material fact and the moving party is entitled to judgment as a matter of law. *Froning & Deppe, Inc. v. South Story Bank & Trust Co.*, 327 N.W.2d 214, 215 (Iowa 1982).

1. *Jurisdiction.* The Local asserted in its motion for summary judgment that the Public Employment Relations Board (PERB) has exclusive jurisdiction over all fair representation claims, thereby depriving the district court of any jurisdiction over such claims. The district court generally rejected this ground of the motion.

On appeal the Local contends this ruling was erroneous, again asserting its jurisdictional claim. The County, as cross-appellee, urges affirmance of the district court's ruling on this ground. The Iowa State Education Association and PERB filed amicus curiae briefs, also urging affirmance on this ground.

The issue here is simply whether we should recognize, as a cause of action, a claim that a public employee union breached its duty of fair representation owed to one of its members. Federal and state courts have concurrent jurisdiction of such causes of action regarding private sector employees covered by the provisions of the federal Labor Management Relations Act (LMRA), under section 301 of that legislation. *See* 29 U.S.C. § 185; *Vaca v. Sipes*, 386 U.S. 171, 188, 87 S.Ct. 903, 915–16, 17 L.Ed.2d 842, 856 (1967).

Norton, an employee of a political subdivision of this state, is not covered by the LMRA. *See* 29 U.S.C. § 152(2). Norton, the County, and the Local are subject to the Public Employment Relations Act, Iowa's labor relations law regarding public employees. *See generally* Iowa Code ch. 20 (1983).

■ The doctrine of fair representation was first developed in a series of cases involving alleged racial discrimination by unions certified as exclusive bargaining representatives under the Railway Labor Act. *See Tunstall v. Brotherhood of Locomotive Fireman*, 323 U.S. 210, 213, 65 S.Ct. 235, 237, 89 L.Ed. 187; 193 (1944);

*Steele v. Louisville & N.R.R. Co.*, 323 U.S. 192, 202–03, 65 S.Ct. 226, 232, 89 L.Ed. 173, 183 (1944). Ultimately, the doctrine was extended to unions certified under the LMRA, which superseded the old National Labor Relations Act in 1947. *See Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048, 1057–58 (1953). Under this doctrine a union has, as a part of its statutory authority to represent all members of a designated unit,

[a] statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.

*Vaca*, 386 U.S. at 177, 87 S.Ct. at 910, 17 L.Ed.2d at 850.

■ Iowa's Public Employment Relations Act is patterned after the LMRA. *See* Pope, *Analysis of the Iowa Public Employment Relations Act*, 24 Drake L. Rev. 1, 8 (1974). Thus, in construing our act, we look for guidance to the construction placed on analogous provisions of the LMRA. *See, e.g., City of Davenport v. PERB*, 264 N.W.2d 307, 312 (Iowa 1978) (Iowa Public Employment Relations Act excludes supervisory employees as does the LMRA; Iowa's definition of supervisory employee taken from federal statute); *Sergeant Bluff–Luton Educ. Ass'n v. Sergeant Bluff–Luton Community School Dist.*, 282 N.W.2d 144, 146–47 (Iowa 1979) (comparing Iowa Code section 20.17(5), which permits enforcement of collective bargaining agreement in district court civil action, to section 301 of the LMRA, which permits civil suits for violation of collective bargaining agreement).

■ Generally, the National Labor Relations Board (NLRB) has exclusive jurisdiction over unfair labor charges. *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244–45, 79 S.Ct. 773, 779–80, 3 L.Ed.2d 775, 783 (1959). State and federal court suits over such charges are preempted in favor of proceedings before the NLRB. This is so because Congress intended to eliminate "potentially conflicting

'rules of law, of remedy, and of administration'" regarding the LMRA. *Vaca*, 386 U.S. at 178–79, 87 S.Ct. at 910, 17 L.Ed.2d at 851.

■ Yet the Supreme Court has recognized exceptions to the preemption doctrine in the area of unfair labor practices, and these exceptions include fair representation actions. Federal and state courts have concurrent jurisdiction over such actions. *Vaca*, 386 U.S. at 180–81, 87 S.Ct. at 912, 17 L.Ed.2d at 852.

The union in *Vaca* refused to take an employee-member's grievance to arbitration. The employee sued the union in state court, alleging the union had breached the collective bargaining agreement when it refused to take the grievance to arbitration under the agreement's procedure. The union raised a jurisdictional defense, asserting that the basis of the employee's action was an unfair labor practice claim, which was within the exclusive jurisdiction of the NLRB. *See* 29 U.S.C. § 158(b) (unfair labor practices).

The Supreme Court recognized that this preemption doctrine had never been rigidly applied to cases "where it could not fairly be inferred that Congress intended exclusive jurisdiction to lie with the NLRB." *Vaca*, 386 U.S. at 179, 87 S.Ct. at 911, 17 L.Ed.2d at 851. To emphasize its point, the Court pointed to certain statutory exceptions, most notably section 301 of the LMRA, 29 U.S.C. § 185, which permits a suit for breach of a collective bargaining agreement regardless of whether the particular breach is also an unfair labor practice within the jurisdiction of the NLRB. *Vaca*, 386 U.S. at 179–80, 87 S.Ct. at 911, 17 L.Ed.2d at 851. The Court then set out the following reasons for rejecting preemption and exclusive jurisdiction in suits involving a union's fair representation duty.

First, the primary justification for preemption, the need to avoid conflicting rules of substantive law in the labor relations area, is not applicable to cases involving alleged breaches of a union's duty of fair representation. This is so because the fair representation doctrine is a creature of the federal courts and was developed long before the NLRB was given unfair labor practice jurisdiction over union activities under the LMRA. *Vaca*, 386 U.S. at 180–81, 87 S.Ct. at 912, 17 L.Ed.2d at 852.

Second, fair representation suits often require review of substantive matters not within the jurisdiction of the NLRB. Thus, the NLRB brings no "substantially greater expertise to bear on these problems than do the courts." *Vaca*, 386 U.S. at 181, 87 S.Ct. at 912, 17 L.Ed.2d at 852–53.

Third, courts are in a better position than the NLRB to protect an individual union member's rights, including the right to fair representation. Under the collective bargaining scheme fostered by Congress in the LMRA, the interests of the individual employee are necessarily subordinate to the collective interests of all employees in a bargaining unit. The Court looks upon the duty of fair representation as a "bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." *Vaca*, 386 U.S. at 182, 87 S.Ct. at 912, 17 L.Ed.2d at 853.

Finally, fair representation suits are primarily breach of contract actions brought pursuant to section 301 of the LMRA. Usually, the employee sues the employer and the union. In some cases, the union's breach of duty will enhance the employee's damages. Thus, the trial court has to fashion a remedy to accommodate these damages. The Court concluded that it would make no sense to permit the trial court to fashion a remedy only regarding the employer. *Vaca*, 386 U.S. at 187, 87 S.Ct. at 915, 17 L.Ed.2d at 856.

■ In some instances, collective bargaining agreements contain grievance and arbitration provisions that are intended to provide the exclusive remedy for breach of contract claims. Preemption would still not apply. *Vaca*, 386 U.S. at 184, 87 S.Ct. at 913, 17 L.Ed.2d at 854. The principle of exhaustion of administrative remedies may, however, be invoked to preclude court relief. Thus, employees must at least try to exhaust the exclusive grievance and arbitration procedures in the collective bargain-

ing agreement before bringing suit. *Id.* at 184, 87 S.Ct. at 914, 17 L.Ed.2d at 854.

■ A collective bargaining agreement may give a union the sole power to invoke the higher stages of a grievance procedure. In this circumstance, an employee may still seek judicial enforcement of his contractual rights, if the employee has been prevented from exhausting contractual remedies by the union's wrongful refusal to process the grievance. *Vaca*, 386 U.S. at 185, 87 S.Ct. at 914, 17 L.Ed.2d at 855. The makeup of such a

> suit, as a formal matter, comprises two causes of action. The suit against the employer rests on section 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act.... "Yet, the two claims are inextricably interdependent. 'To prevail against either the company or the Union, ... the [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of the duty by the Union.' " ... The suit is thus not a straightforward breach-of-contract suit under section 301 ... but a hybrid section 301/fair representation claim, amounting to "a direct challenge to 'the private settlement of disputes under [the collective bargaining agreement].' "

*DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 164–65, 103 S.Ct. 2281, 2290–91, 76 L.Ed.2d 476, 489 (1983) (citations omitted).

Whether we should apply the federal concurrent jurisdiction approach or the preemption-exclusive jurisdiction approach to fair representation claims under Iowa Code chapter 20 depends upon what the Iowa legislature intended. Iowa Code chapter 20 creates a scheme in which PERB is given broad power to resolve labor disputes, including those over the duty of fair representation.

Section 20.17(1) specifies that

> [t]he employee organization certified as the bargaining representative shall be the *exclusive representative of all public employees* in the bargaining unit and *shall represent all public employees fairly.*

(Emphasis added.) As noted in the italicized language, this provision codifies the union's duty of fair representation.

Arguably, a breach of that duty is a prohibited practice under section 20.10(3), which provides:

> It shall be a prohibited practice for public employees or an employee organization or for any person, union or organization or their agents willfully to:
>
> a. Interfere with, restrain, coerce or harass any public employee with respect to any of [the employee's] rights under this chapter or in order to prevent ... [the employee's] exercise of any such right, including, without limitation, all rights under section 20.8.

A breach of the duty of fair representation has been held to be an unfair labor practice under section 8(b)(1)(A) of the LMRA, 29 U.S.C. § 158(b)(1)(A), a provision substantially similar to Iowa Code section 20.10(3). *See NLRB v. General Truck Drivers, Local 315*, 545 F.2d 1173, 1175 (9th Cir.1976). The courts of other states have construed their statutes in a similar way. *Leahy v. Local 1526, A.F.S.C.M.E.*, 399 Mass. 341, 347–48, 504 N.E.2d 602, 606–07 (1987) (breach of duty of fair representation is a prohibited practice under section 10(b) of the Massachusetts Labor Relations Act, which provision is substantially similar to Iowa Code section 20.10(3)); *Teamsters, Local No. 45 v. State ex rel. Bd. of Personnel*, 195 Mont. 272, 275–76, 635 P.2d 1310, 1312–13 (1981) (breach of duty of fair representation is a prohibited practice under section 39–31–402 of the Montana Public Employee's Collective Bargaining Act, which provision is substantially similar to Iowa Code section 20.10(3)).

■ Iowa Code section 20.11(1) provides that "[p]roceedings against a party alleging a violation of section 20.10 [prohibited practices], shall be commenced by filing a complaint with the board." Our question is

whether this is a grant of exclusive or merely concurrent jurisdiction over complaints alleging a breach of the fair representation duty. For the reasons that follow, we think the legislature intended the courts and PERB to have concurrent jurisdiction over such complaints.

In codifying the doctrine of fair representation under section 20.17(1), it appears that the Iowa legislature was cognizant of how the doctrine developed federally. We may presume the legislature knew that. The federal courts, rather than the NLRB, were responsible for the doctrine's creation and early enforcement. Nothing in Iowa Code chapter 20 indicates that the legislature intended to depart from the federal approach with respect to the jurisdiction of the courts over fair representation suits brought by public employees.

Moreover, all of the reasons given by the Supreme Court in *Vaca* for not reposing exclusive jurisdiction over fair representation claims in the NLRB apply with equal force to PERB.

For example, we are not convinced that following the federal concurrent approach would result in an inconsistent development of substantive law on the issue of fair representation. Our district courts and PERB would presumably look to the same body of law on this issue. Nor are we convinced that PERB has a greater expertise than the district courts on this issue.

We are, however, convinced that the courts are in a better position than PERB to protect individual rights. Unlike the NLRB, PERB has no remedial power to cause reinstatement of employees with back pay. *See* Pope, 24 Drake L. Rev. at 48; LMRA § 10(c), 29 U.S.C. § 160(c).

Finally, most fair representation suits would see the employee suing the employer for breach of contract and the union for breach of its fair representation duty. That was done in Norton's case. As in the federal context, it would make no sense to permit the district court to award relief against the employer and leave it to PERB to fashion some form of relief against the union.

One additional reason convinces us the legislature intended that we follow the federal approach to fair representation suits. Iowa Code section 20.17(5), entitled "Procedures," significantly provides that the

> [t]erms of any collective bargaining agreement may be enforced by a civil action in the district court of the county in which the agreement was made upon the initiative of either party.

Such a broad enforcement provision relating to collective bargaining agreements clearly denotes such legislative intent. *Cf. Sergeant Bluff*, 282 N.W.2d at 146 (section 20.17 held to provide basis for action to enforce or vacate arbitrator's award). Fair representation is a statutory duty. As such, it is automatically a part of every chapter 20 collective bargaining agreement, just as if it were specified explicitly in such an agreement. We think the phrase "upon the initiative of either party" is broad enough to include such a third-party beneficiary, the employee.

For all of these reasons, we hold that the district court has concurrent jurisdiction with PERB over a public employee's action against a union that is based on the union's violation of a statutory duty of fair representation under Iowa Code section 20.17(1). The district court here correctly rejected this ground of the Local's motion for summary judgment.

2. *Statute of Limitations.* The Local also asserted in its motion for summary judgment, as it asserts here, that Norton had not filed her action within the applicable period of limitation. The district court rejected this ground of the motion.

The Local contends that the applicable period of limitation for fair representation suits by public employees is set out in Iowa Code section 20.11(1). That section pertinently provides that proceedings against a party alleging a violation of section 20.10, the unfair labor practices provision, must be commenced by filing the complaint with PERB within ninety days of the alleged violation. Because Norton did not file such a complaint, the Local argues that her claim is now barred.

■■■ The ninety-day limit in section 20.11(1) is mandatory, and any complaint alleging a violation of section 20.10 that is not filed within that time frame is barred. *Brown v. PERB*, 345 N.W.2d 88, 93–94 (Iowa 1984); *see also* 621 Iowa Admin. Code 3.1 (1986). Had Norton chosen to file a prohibited practice complaint against the Local with PERB, there is no doubt that section 20.11(1) would control. She chose, however, to seek damages against the Local in a district court action. In these circumstances, there is no specific statute of limitations fixed by the legislature regarding a court action for a union's breach of its duty of fair representation.

In *DelCostello v. Teamsters* the Supreme Court, facing a similar problem with respect to fair representation suits under section 301 of the LMRA, noted that its task was to "borrow the most suitable statute or other rule of timeliness from some other source." 462 U.S. at 158, 103 S.Ct. at 2287, 76 L.Ed.2d at 485. The Court noted that in most instances, Congress intended the courts to apply the most analogous statute of limitations under state law, unless such a statute would interfere with the implementation of policies underlying the particular federal statute involved. The Court chose to depart from this norm and borrowed the six-month limitation period in section 10(b) of the LMRA, 29 U.S.C. § 160(b), for making charges of unfair labor practices to the NLRB. *Id.* at 172, 103 S.Ct. at 2294, 76 L.Ed.2d at 494. It did so believing that the six-month period provided a closer analogy than available state statutes and better promoted the policies underlying the LMRA. *Id.* at 172, 103 S.Ct. at 2294, 76 L.Ed.2d at 493.

■■■ We, of course, are not bound by the Supreme Court's choice of limitations because federal law is not implicated here. We think the closest analogy to an action for breach of the duty of fair representation is a claim for legal malpractice because both actions challenge the adequacy of representation and circumstances requiring specialized knowledge in advocacy skills. *See DelCostello*, 462 U.S. at 173–74, 103 S.Ct. at 2295, 76 L.Ed.2d at 494 (Stevens, J., dissenting); *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 71, 101 S.Ct. 1559, 1568, 67 L.Ed.2d 732, 745 (1981) (Stevens, J., concurring in part and dissenting in part). Our statute of limitations applicable to attorney malpractice is in section 614.1(4), which provides a five-year limitation period. *See Millwright v. Romer*, 322 N.W.2d 30, 34 (Iowa 1982). We thus adopt a five-year period of limitation for actions alleging breach of the fair representation duty. Norton's action was clearly brought within this time frame. The district court was also correct in rejecting this ground of the Local's motion for summary judgment.

In effect, by today's decision we now have for fair representation suits a six-month period of limitation for private sector employees and a five-year period for public employees. Yet the underlying policies of the LMRA and Iowa's Public Employment Relations Act are the same: to resolve labor disputes expeditiously. In *Mitchell* the Supreme Court, writing in the private sector context, explained why an unduly long period of limitations is undesirable:

> [T]he grievance and arbitration procedure often processes disputes involving interpretation of critical terms in the collective-bargaining agreement affecting the entire relationship between company and union. This system, with its heavy emphasis on grievance, arbitration, and the "law of the shop," could easily become unworkable if a decision which has given "meaning and content" to the terms of an agreement, and even affected subsequent modification of the agreement, could suddenly be called into question as much as six years later.

*Mitchell*, 451 U.S. at 64, 101 S.Ct. at 1564–65, 67 L.Ed.2d at 741. We think this reasoning has equal application to the public sector. We are therefore convinced that the Iowa legislature should address the issue and fix a more suitable statute of limitations that strikes a better balance between the employee's individual interest in prosecuting a grievance and the public's interest in expeditiously resolving public sector labor disputes.

B. *Motion for judgment notwithstanding the verdict.* The Local moved for a directed verdict at the close of Norton's evidence and at the close of all the evidence. The same grounds were urged in each motion. *See* Iowa R. Civ. P. 216. The district court denied both. Posttrial, the Local filed a motion for a judgment notwithstanding the verdict, which was also denied. *See* Iowa R.Civ.P. 243.

Iowa Rule of Civil Procedure 243 allows the district court to grant a new trial or to enter judgment as though it had directed a verdict for the movant. Thus, it gives the district court an opportunity to correct its error in failing to sustain a motion for a directed verdict. *Meeker v. City of Clinton,* 259 N.W.2d 822, 827 (Iowa 1977). Such a motion must stand or fall on the grounds urged in the motion for a directed verdict. Consequently, our review is limited to the grounds urged in the motion for a directed verdict. *Id.* at 827.

In its motions for a directed verdict the Local urged, as it does here, that Norton had the burden to show that the Local acted either in bad faith or in an arbitrary, discriminatory, or perfunctory manner when it handled her grievance. At most, the Local contended, the evidence only shows a negligent handling of her grievance, conduct below that which was required to be proven.

■■■ The directed verdict motions thus challenged the sufficiency of the evidence to generate a jury question on the Local's handling of Norton's grievance. This is only one of four elements Norton was required to prove as part of her fair representation claim. In addition, the court required Norton to prove three other elements: (1) that she was a member of the Local, (2) that she was discharged from her employment without proper cause, and (3) that she filed a grievance with the Local against her employer for improper discharge. We note that the Local does not claim here a lack of evidence to support these three elements but only challenges the sufficiency of the evidence as to the Local's failure to pursue Norton's grievance properly. We mention the limited nature of the Local's challenge because we do not want to leave the impression that an employee can recover against a union without showing a breach of the collective bargaining agreement by the employer. *See DelCostello,* 462 U.S. at 164–65, 103 S.Ct. at 2290–91, 76 L.Ed.2d at 489 (breach by employer is element of employee's burden of proof). The Local did not raise the issue of the County's breach in the trial court, nor does it raise that issue here. As such, we do not address the issue as it pertains to the facts in this case.

In determining whether a jury question is engendered when a party seeks a directed verdict, the district court views the evidence in the light most favorable to the party against whom the motion is made, regardless of whether such evidence is contradicted. Every legitimate inference that may reasonably be deduced from the evidence must be carried to its aid. If reasonable minds can differ on the issue, it is a jury question. *Meeker,* 259 N.W.2d at 828. In determining the sufficiency of the evidence on this issue, we view the evidence in accordance with the same principles required for review by the district court. *Id.*

■■■ In the private sector, a union breaches its duty of fair representation by conduct toward a member of the collective bargaining unit that is arbitrary, discriminatory, or in bad faith. *Vaca,* 386 U.S. at 190, 87 S.Ct. at 916, 17 L.Ed.2d at 857. Such a union also breaches its duty when it arbitrarily ignores or perfunctorily processes a grievance. *Id.* at 191, 87 S.Ct. at 917, 17 L.Ed.2d at 858. A breach of any one of these standards is sufficient to establish unfair representation. *Ruzicka v. General Motors Corp.,* 523 F.2d 306, 309–10 (6th Cir.1975), *cert. denied,* 464 U.S. 982, 104 S.Ct. 424, 78 L.Ed.2d 359 (1983). The relevant inquiry is not

> "whether the union in fact pursues an employee's grievance," but rather "whether the union has made a full investigation, has given the grievant notice and an opportunity to participate, has mustered colorable arguments and has refuted insubstantial arguments by the employer." Absent such action by the

union, the arbitration process could become little more than a sham, and the rationale behind deference to the decisions of arbitration panels could be entirely undercut. "[A]dministration and grievance adjustment are performed by the union at a much lower 'level of visibility' and generality than contract negotiation, and are thus more readily subject to 'manipulation' by a willful union and more readily garbed with appearances of good faith or mere carelessness."

*Miller v. Gateway Transp. Co.*, 616 F.2d 272, 277 n.12 (7th Cir.1980) (citations omitted).

In *Ruzicka,* the employee-plaintiff was discharged for allegedly being intoxicated on the job and using threatening and obscene language toward his superiors. The defendant-union instituted a grievance process under its collective bargaining agreement with the defendant-employer but, after several steps in the process, neglected to follow through. The employee sued the employer for wrongful discharge and the union for breach of its fair representation duty. Concluding that such a breach by the union had been established, the court said:

> [T]he Local did not inform either [the employee] or [the employer] that it had decided either to continue or to stop processing the employee's grievance. Such negligent handling of the grievance, unrelated as it was to the merits of [the employee's] case, amounts to unfair representation. It is a clear example of arbitrary and perfunctory handling of a grievance.

523 F.2d at 310. Rejecting the union's claim that bad faith is an essential element of any claim of unfair representation, the court emphasized that

> when a union makes no decision as to the merit of an individual's grievance but merely allows it to expire by negligently failing to take a basic and required step toward resolving it, the union has acted arbitrarily and is liable for a breach of its duty of fair representation.

*Id.*

■ We think the *Vaca* standards as interpreted in *Ruzicka* should apply to a fair representation claim under Iowa Code chapter 20. Applying these standards, we think the evidence here easily establishes Norton's claim that the Local breached its duty of fair representation. The district court's ruling on the Local's motion regarding this element was correct.

Once the sheriff denied Norton's grievance, the Local had seventy-two hours under the collective bargaining agreement to request arbitration. The agreement clearly provided that failure to do so constituted a waiver of arbitration. Such a failure, as we have noted, is also deemed a settlement of the grievance on the basis of the employer's last answer, which in this case was a denial of the grievance. The Local was well aware that diligent action was necessary on its part. The Local concedes no action was taken before the deadline because its representative had left town, an excuse unrelated to the merits of Norton's claim. The Local notified neither Norton nor the County that it had made some decision about processing Norton's grievance. It made no decision as to the merits of her claim but, rather, "merely allowed it to expire out of negligent and perfunctory handling." *Ruzicka,* 523 F.2d at 310.

C. *The evidentiary issues.* The Local argues that the district court erroneously allowed Norton to introduce evidence (1) regarding her Job Service case and (2) regarding the relationship between the Local and the International, of which the Local is an affiliate. The Local made timely objections to the admission of this evidence, which the district court overruled.

We think the court ruled properly.

When reviewing evidentiary rulings such as these, we keep in mind that "determinations of the relevance of evidence rests within the sound discretion of the trial court and will be reversed only upon a showing that such discretion has been abused." *State v. Gordon,* 354 N.W.2d 783, 784 (Iowa 1984).

■ The Local first takes exception to the district court's decision to permit testimony regarding Norton's Job Service case

and to admit the written Job Service decision as an exhibit. Job Service found that Norton had not engaged in misconduct and was therefore entitled to unemployment benefits. According to Norton, evidence of this decision was introduced here to support her claim that she had been discharged without proper cause.

The Local argues that proper grounds for discharge and eligibility for unemployment benefits are two different matters. *See Brown v. Iowa Dep't of Job Serv.*, 367 N.W.2d 305, 306 (Iowa App.1985). Even if we assume that this argument correctly states the law, we find it unpersuasive, for it does not address whether the challenged evidence was relevant.

Though the Job Service decision was not dispositive here, the finding that Norton had not engaged in misconduct was probative with respect to the "proper cause" issue. As such, evidence regarding the Job Service decision was admissible. *See* Iowa R. Evid. 401, 402. The Local failed to show how this relevant evidence was excludable under rule 403 because of prejudice.

In summary, we do not think the district court abused its discretion by allowing introduction of this evidence.

Next, the Local argues that the court improperly allowed testimony regarding the relationship between the Local and the International. The implication behind this testimony, according to the Local, was that the International, a "deep pocket," would be liable for any damages.

Norton, however, contends that the testimony was intended only to show the general structure of this particular union. The testimony was therefore relevant and non-prejudicial.

We agree with Norton. Testimony on the basic workings of the union was clearly relevant as background information for the jury. And, despite its argument, the Local has failed to identify any testimony that prejudicially implies that the International would be liable to Norton.

Again, we do not think the district court abused its discretion.

D. *The jury instruction issue.* The Local challenges the district court's jury instruction on the word "arbitrarily" regarding the union's duty of fair representation. The instruction as submitted to the jury says that "arbitrarily" refers to "action taken without fair, solid, and substantial cause. It refers to action which will not stand the test of reason or principle." The Local contends that the court should have amended the instruction to say that "a union's action is non-arbitrary ... where such action is based upon relevant permissible union factors."

In deciding this issue, we keep in mind that a "misstatement of law in a jury instruction is reversible error." *Clinton Land Co. v. M/S Assocs.*, 340 N.W.2d 232, 234 (Iowa 1983). A trial court, however, is "free to phrase instructions in its own words so long as the instructions fully and fairly inform the jury of the issues and applicable law." *Id.*

We think the court's instruction here fairly informed the jury of the issue at hand. The issue was whether the Local had behaved arbitrarily, and the instruction clearly raised that matter.

As for the instruction's legal sufficiency, we note that the language used is identical to a recognized legal definition of "arbitrary." *See Black's Law Dictionary* 96 (5th ed. 1979) ("[w]ithout fair, solid, and substantial cause"). The instruction is also similar to the definition used in a federal case concerning a union's conduct. *See Melanson v. John J. Duane Co.*, 507 F.Supp. 238, 241 (D.Mass.1980) ("A union behaves arbitrarily toward an aggrieved union member if it ignores a meritorious grievance *for no apparent reason* or processes it with only perfunctory attention.").

Here, the language of the instruction is consistent with, if not identical to, a definition of "arbitrary" that we have used in the past. In *Powers v. Fisher Controls Co.*, we said that "[a]rbitrary means *without rational basis....* Arbitrary action has been defined as a 'willful and *unreasonable* action, without consideration and in disregard of the facts or circumstances of the case.'" 246 N.W.2d 279, 282 (Iowa

1976) (emphasis added); *cf. Wiese v. Iowa Dep't of Job Serv.,* 389 N.W.2d 676, 680 (Iowa 1986) (the term "good cause" encompasses "excuses that will bear the *test of reason* ").

In summary, the court's instruction as submitted states an acceptable legal definition of "arbitrarily," and it sufficiently informed the jury of the issue that had been raised. Further, the Local has failed to cite any authority that either supports its proposed instruction or identifies the inadequacy of the instruction as submitted. Accordingly, the district court did not err in instructing the jury as it did.

### III. *The Cross–Appeal.*

In her cross-appeal, Norton contends the district court erred in: (1) denying her motion for a default judgment against the International, (2) denying her motion for a summary judgment against the County on her breach of contract and section 1983 claims, (3) granting the County's motion for a summary judgment on her breach of contract and section 1983 claims, (4) refusing her requested jury instruction on punitive damages, and (5) refusing to grant her motion for an award of attorney's fees.

A. *Motion for default.* The motion for a default judgment against the International asserted that a default judgment was proper because the International had failed to appear in any way after it was served with Norton's notice and petition. Norton, however, effected this service by serving the Local, which Norton contends could accept on behalf of the International.

The Local replies that it is not an agent of the International for purposes of service. We think the district court's decision not to enter a default judgment was proper.

In general, a default judgment may be entered only against persons who have been both properly named as parties to the suit and properly served. *Marks v. Shinrone, Inc.,* 220 N.W.2d 889, 890 (Iowa 1974); Iowa R.Civ.P. 49, 50; 49 C.J.S. *Judgments* § 191, at 328 (1947). Iowa Rule of Civil Procedure 230 pertinently provides:

A party shall be in default whenever that party: (a) fails to serve, and within a reasonable time thereafter file, a motion or answer as required in [rules] 53 or 54, or, has appeared, without thereafter serving any motion or pleading as stated in [rule] 87; or (b) fails to move or plead further as required in [rule] 86....

The evidence is undisputed here that the International did not appear in any way.

The significant point of contention, then, is whether the International was properly served. The district court's decision on this issue is similar to a ruling on a special appearance. The court's findings of fact are binding on us if supported by substantial evidence. *Hovey v. Elson,* 303 N.W.2d 132, 135 (Iowa 1981) (service upon alleged agent of defendant challenged via special appearance; court's ruling was finding of fact). Evidence is substantial when a reasonable mind could accept it as adequate to reach the same findings. *Norland v. Iowa Dep't of Job Serv.,* 412 N.W.2d 904, 913 (Iowa 1987).

Iowa Rule of Civil Procedure 56.1(f) provides that service upon "an association suable under a common name" may be effected "by serving ... any agent ... authorized by appointment or by law to receive service of original notice." We think that the International here is "an association suable under a common name." *See* Iowa Code § 20.23 ("Any employee organization ... may ... be sued as an entity under the provisions of this chapter."). That being the case, the issue then is whether the Local is an agent of the International.

A federal district court faced the same issue in *Heck v. C.H. Heist Corp.,* 635 F.Supp. 648 (S.D.W.Va.1986). There, one of the defendants, an international union, contended that service upon an officer of a local affiliate did not constitute valid service upon the international union. The court said that agency was "the key concern" under the relevant service statute. That statute, 29 U.S.C. section 185(d), provided that service upon an agent of a labor organization constituted service upon the organization. Applying the statute, the

**360**

court concluded that service had been proper because the local affiliate was an agent of the international union. *Heck*, 635 F.Supp. at 654–56.

In making this determination, the court in *Heck* said that

[w]hether an agency relationship existed ... must be determined by reviewing the actual relationship between the two entities. A vital area of inquiry is whether the two entities are autonomous. If the affiliate, the local union, can be said to lack "significant control" over its own affairs, then an agency relationship may be found. Of course, the mere fact of affiliation will not create a presumption of agency. Courts have traditionally examined the constitution and the bylaws of the two entities to ascertain the degree of control exerted by one over the other.

*Id.* at 654 (citations omitted). The court then went on to apply a balancing test that weighed the matters left to the locals' control and discretion against those controlled by the international union. Using this test, the court concluded that an agency relationship existed. It found that under the constitution and bylaws, the locals' powers were outweighed by the international union's. *See id.* at 655.

Under the union's constitution and the locals' bylaws, the locals in *Heck* did retain some degree of autonomy. They kept their own books and accounts, filed their own government reports, and negotiated their own collective bargaining agreements.

On the other hand, the constitution required the locals to apply to the international union for a charter. Bylaws of the locals were to be submitted to the international union for its approval and could not conflict with the union's constitution. Further, the president of the international union had the authority to supervise the locals, adjust strikes and grievances, make binding interpretations of the constitution, revoke local charters for disobedience of the constitution or presidential orders, and take control of locals that were being operated corruptly or undemocratically. The executive board of the international union also had authority over the locals, including approval power over any agreements the locals negotiated. In addition, the international union had been directly involved in the dispute at hand. After weighing these factors, the court's conclusion was that the degree of control exercised by the international union outweighed the locals' own discretion and control.

We think the *Heck* court's approach is a good one, and we adopt it. In applying the balancing test, however, we reach a different result.

█ As in *Heck*, the Local here retains discretion with respect to its day-to-day operations. It also has the authority to negotiate agreements.

On the other side of the scale, the Local is subject to some of the same controls that were found in *Heck*. The Local had to obtain a charter from the International. The Local is required to follow the International's constitution and make certain that Local bylaws do not conflict with it. The Local is also required to follow policies set by the International. Part of the Local's dues are regularly sent to the International, and the Local has to make monthly financial reports. The International has the power to investigate any conflict between the Local and the International and to dictate a resolution of such a conflict. The International is also entitled to impose special fines and levies upon the Local.

The relationship between the Local and the International presents a close question. The Local is indeed subject to some control by the International, but the record shows that control to be very general. While the International does set broad policies that the Local must follow, the record does not show the extensive direct control present in *Heck*.

For example, there is no evidence here that the board or officers of the International have the power to control specific aspects of the Local's operations. There was also no direct involvement of the International in the present case. Further, nothing in the record shows that the International must approve agreements negoti-

ated by the Local. We think that leaving negotiations to the Local is a particularly significant indication of its autonomy, since, after all, negotiation is one of the primary functions of a union.

The district court did not enter written findings on this issue. Instead, it made an oral ruling on the default judgment motion without referring to the balancing test we have just approved. But, based on the record here, we think a reasonable mind could find that the Local's autonomy outweighed the International's control and that therefore no agency relationship existed. Without an agency relationship, the Local could not validly accept service for the International. Hence, because the International was not properly served, the district court was correct in refusing to enter a default judgment.

B. *The summary judgment motions.* 1. *Breach of contract claim.* The district court's summary judgment ruling as to Norton's breach of contract claim was based, in part, on the at-will employment rule. The rule provides, with some exceptions not applicable here, that such an employment may be terminated at any time, for any reason. *See Hamilton v. First Baptist Elderly Hous. Found.*, 436 N.W.2d 336, 340 (Iowa 1989).

In its ruling, the court determined that the at-will rule is codified in Iowa Code section 331.652(7). This section empowers a county sheriff, subject to section 331.903 and chapter 341A, to "appoint and remove deputies, assistants and clerks." Simply put, the district court apparently felt that section 331.652(7) allowed Sheriff Skellenger to terminate Norton's employment for any reason.

Norton does not appear to dispute the "at-will" nature of her employment. She contends, however, that article 4 of the collective bargaining agreement altered that nature by requiring a "proper cause" for her termination.

For the following reasons, we agree with the district court's ruling. Section 331.-903(1) allows a county sheriff, with the approval of the board of supervisors, to appoint deputies, assistants, or clerks.

Once such an appointment is so approved, the sheriff issues a written certificate of appointment to the appointee. The sheriff, however, retains the power to revoke the certificate but must do so in writing. *See* Iowa Code § 331.903(2). Here there is no dispute that the revocation was in writing.

Iowa Code section 341A.7, with certain exceptions, cloaks deputy sheriffs with civil service status. Section 341A.12 provides that a deputy sheriff cannot be removed except for cause. *See also Hawkinson v. Louisa County Civil Serv. Comm'n*, 431 N.W.2d 350, 353 (Iowa 1988) (substantial evidence test applies when removals are reviewed on appeal under section 341A.12). The district court found that Norton was not covered by chapter 341A, apparently because she was not a deputy but an assistant or clerk. Norton now claims there was no evidence that she was an assistant or clerk, nor any evidence that her position as jailer/dispatcher was other than that of a deputy sheriff.

█ Because she did not file a rule 179(b) motion challenging the district court's finding on this issue, Norton is precluded from challenging that finding here. *See State Farm Mut. Auto Ins. Co. v. Pflibsen*, 350 N.W.2d 202, 206–07 (Iowa 1984). Thus, nothing in chapter 341A or section 331.903 precludes application of the at-will employment rule in section 331.-652(7) to Norton's employment status.

█ Even assuming the issue was properly preserved, Norton's challenge must fail. Regardless of her status, she could not, in this action, prevail against the County. As an assistant, clerk, or deputy without civil service status, Norton would clearly be an employee at-will, subject to discharge at any time for any reason.

As a deputy cloaked with civil service status, she would be subject to the provisions of chapter 341A. Pursuant to section 341A.12, a deputy sheriff may be removed only for cause and upon a written accusation of the sheriff. The aggrieved deputy's remedy lies in an appeal to the civil service commission, and from there to the district court. Iowa Code § 341A.12. We think

Norton's remedy would have been limited in these circumstances to the statutory remedy in section 341A.12. *Cf. Northrup v. Farmland Indus., Inc.*, 372 N.W.2d 193, 197 (Iowa 1985) (civil rights statute, chapter 601A, preempts independent common law action also premised on discrimination).

We next address whether article 4 of the collective bargaining agreement overrides section 331.652(7) and elevates Norton's employment to a more permanent status.

Article 4 provides, in pertinent part, that [e]xcept to the extent expressly abridged by a specific provision of the [collective bargaining agreement], [the county] shall have, *in addition to all powers, duties, and rights established by constitutional provision, statute, ordinance, charter, or special act, the exclusive power, duty, and the right to: ... discharge employees for proper cause....*

(Emphasis added.) The italicized language tracks language found in section 20.7, the provision enumerating specifically the rights of public employers:

Public employers shall have, *in addition to all powers, duties, and rights* established by *constitutional provision, statute, ordinance, charter, or special act, the exclusive power, duty, and the right to:*

    ....

3. Suspend or *discharge public employees for proper cause.*

(Emphasis added.)

We think the italicized language simply means that a public employer retains the power to terminate the employment of a public employee without proper cause when some provision of law, such as section 331.-652(7), allows it to do so. *See City of Fort Dodge v. Iowa PERB*, 275 N.W.2d 393, 397–98 (Iowa 1979) (section 20.7 reserves broad rights to employers); *see also* Pope, 24 Drake L. Rev. at 9–11 (section 20.7 confirms all the statutory and constitutional powers previously given to the public employer). Iowa Code section 331.652(7) had been part of Iowa law long before the Iowa Public Employment Relations Act was passed. County sheriffs thus retained the power to terminate assistants, clerks, and deputies without civil service status without cause after the Act was passed. Article 4, tracking the language of section 20.7 as it does, clearly recognizes this retained power.

Any notion that a provision in a collective bargaining agreement like article 4 may override a statutory grant of power like section 331.652(7) is clearly dispelled by Iowa Code section 20.28. Section 20.28 provides that

[a] provision of the Code which is inconsistent with any term or condition of a collective bargaining agreement ... shall supersede the term or condition of the collective bargaining agreement....

2. *Section 1983 claim.* The second part of the district court's summary judgment ruling rejected Norton's section 1983 claim as a matter of law. She contends this was error.

One count of Norton's petition alleges a violation of 42 U.S.C. section 1983, the Civil Rights Act of 1871. Section 1983 affords a citizen a right of action against any person, who under color of law, deprives the citizen of any rights secured by the constitution.

In support of her contention, Norton simply argues that the due process clause of the fourteenth amendment to the United States Constitution guarantees that her property shall not be deprived without due process of law. She further argues that she had a property interest in her job by virtue of the "just cause" provision of article 4 of the collective bargaining agreement. As such, she concludes, she was entitled to a hearing and reasons for her discharge.

Norton is asserting a procedural due process challenge. *See State v. Hartog*, 440 N.W.2d 852, 855 (Iowa 1989). As we have already noted, if her status was one of a deputy without civil service protection, or an assistant or clerk, she was an employee at-will, who could be fired at any time, for any reason, notwithstanding article 4 of the collective bargaining agreement. As such, she was not entitled to the procedural due process she claims. *See Hodgin v. No-*

*land*, 435 F.2d 859, 860–61 (4th Cir.1970), *cert. denied*, 408 U.S. 942, 92 S.Ct. 2846, 33 L.Ed.2d 766 (1972) (city librarian held position at will and at the pleasure of city with no contractual or other arrangements limiting right of termination and hence was subject to summary discharge with or without cause and without formal notice or hearing).

If Norton's status was one of deputy with civil service protection, section 341A provided all the procedural due process she was entitled to. Choosing not to pursue her statutory remedy, Norton cannot now complain she was deprived of her constitutional right to due process.

We conclude the district court correctly granted the County's motion for summary judgment as to Norton's section 1983 challenge. Because we conclude the district court correctly granted the County's motion for summary judgment as to her breach of contract claim and section 1983 claim, Norton's contention that the district court should have granted her motion as to these claims must necessarily fail.

C. *Requested instruction on punitive damages.* Norton argues that the district court erred by refusing to submit her requested jury instruction on punitive damages.

The question of whether punitive damages are proper in a case like this one has already been decided in the federal realm. As the Local points out, the United States Supreme Court has said that under federal labor law, punitive damages may not be assessed against a union that breaches its duty of fair representation by failing to properly pursue a grievance. *See International Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 50–52, 99 S.Ct. 2121, 2126–28, 60 L.Ed.2d 698, 705–07 (1979). According to the Court, "unpredictable" and "substantial" punitive awards might impair the effectiveness of unions as collective bargaining agents by making them financially unstable. "Inflicting this risk on employees, whose welfare depends upon the strength of their union, is simply too great a price for whatever deterrent effect punitive damages may have." *Id.* at 51, 99 S.Ct. at 2127, 60 L.Ed.2d at 706.

Norton, however, argues that we need not follow the federal rule and should instead hold that punitive damages are permissible under Iowa Code chapter 20. We agree.

Like the United States Supreme Court, we think the collective interests of union members must be protected. *Cf. Foust*, 442 U.S. at 50–51, 99 S.Ct. at 2127, 60 L.Ed.2d at 706. But we also think our standards for awarding punitive damages will provide that protection.

We have said that an award of punitive damages is appropriate only when a party acts with actual or legal malice. *Barnhouse v. Hawkeye State Bank*, 406 N.W.2d 181, 184 (Iowa 1987). Actual malice is demonstrated by such things as personal spite, hatred, or ill will. *Id.* Legal malice can be established by proving that illegal or improper conduct was committed with willful, wanton, or reckless disregard for the rights of another. *Dessel v. Dessel*, 431 N.W.2d 359, 362 (Iowa 1988); *C. Mac Chambers Co. v. Iowa Tae Kwon Do Academy*, 412 N.W.2d 593, 598 (Iowa 1987). "More than mere negligence must be shown." *Barnhouse*, 406 N.W.2d at 184.

We think the careful application of these standards will prevent improper punitive awards that would unfairly harm the collective interests of union members. At the same time, allowing punitive damages against a union under the proper circumstances will promote the members' interest in fair representation by punishing the union for its misconduct and by deterring future wrongdoing. *Cf. C. Mac Chambers Co.*, 412 N.W.2d at 598.

We therefore hold that punitive damages against a union are permissible upon proof of actual or legal malice.

We still must decide, however, whether a jury instruction on punitive damages was necessary in this case. If the record does not show actual or legal malice, there was no need for the district court to instruct on punitive damages.

Actual malice can be ruled out here, for there is simply no evidence of personal spite, hatred, or ill will against Norton by the Local. As for legal malice, while the Local's lack of action was arguably improper, it did not rise to the level of willful, wanton, or reckless disregard of Norton's rights. At worst, the record here shows that the Local was negligent in not pursuing Norton's grievance. Because "more than mere negligence must be shown" to justify punitive damages, such damages would have been improper here. Hence, the district court acted properly in refusing to give Norton's requested instruction.

D. *Motion for attorney's fees.* Norton maintains that the district court erred in denying her motion for attorney's fees. We disagree.

The general rule is that attorney's fees are not allowable in the absence of a statute or an agreement by the party to be charged. *E.g., Bethards v. Shivvers, Inc.,* 355 N.W.2d 39, 47 (Iowa 1984). Norton does not cite any statute or agreement providing for attorney's fees here, nor are we aware of such a statute or agreement. Accordingly, the district court acted properly in denying Norton's motion.

IV. *Disposition.*

To summarize our holdings on the issues raised in the Local's appeal, we conclude that the district court acted properly in (1) rejecting the Local's jurisdictional and limitation period grounds for its summary judgment motion, (2) denying the Local's motion for a judgment notwithstanding the verdict, (3) allowing the challenged evidence to be admitted over the Local's objections, and (4) submitting the challenged jury instruction on the word "arbitrarily."

Regarding Norton's cross-appeal, we find that the district court was correct in (1) refusing to enter a default judgment against the International; (2) denying Norton's summary judgment motion and granting the County's concerning her breach of contract and section 1983 claims; (3) refusing to give a jury instruction on punitive damages, although such damages against a union may be permissible in some cases; and (4) denying Norton's motion for attorney's fees.

Finding no error, we affirm.

AFFIRMED.