Robert L. LOCKHART, Plaintiff–Movant,

v.

CEDAR RAPIDS COMMUNITY
SCHOOL DISTRICT, De-
fendant–Respondent.

No. 97–767.

Supreme Court of Iowa.

April 22, 1998.

Matthew Glasson of Glasson, Sole, Mc-
Manus & Combs, P.C., Cedar Rapids, for
movant.

Terry Abernathy and Matthew G. Novak
of Pickens, Barnes & Abernathy, Cedar Rap-
ids, for respondent.

Thomas J. Miller, Attorney General, and
Grant K. Dugdale, Assistant Attorney Gener-
al, for amicus curiae Iowa Department of
Personnel.

Jan V. Berry, Des Moines, for amicus curi-
ae Public Employment Relations Board.

Considered by McGIVERIN, C.J., and
CARTER, LAVORATO, ANDREASEN, and
TERNUS, JJ.

TERNUS, Justice.

This case comes to us on a certified ques-
tion from the United States District Court
for the Northern District of Iowa:

Does Iowa Code § 20.7(3) negate the pre-
sumption of at-will employment for all pub-
lic employees covered under this provision
of the Iowa Public Employment Relations
Act?

Section 20.7(3) states that "[p]ublic employ-
ers shall have ... the right to ... [s]uspend

or discharge public employees for proper cause." Iowa Code § 20.7(3) (1995). For reasons we shall explain, our answer to the certified question is "no"; section 20.7(3) does not negate the common law at-will employment status of public employees.

### I. Background Facts and Proceedings.

Plaintiff, Robert L. Lockhart, was an employee of the defendant, Cedar Rapids Community School District, until his termination in 1996. This lawsuit involves Lockhart's claims against the school district arising out of his termination. The factual background and procedural history of this case are detailed in the federal district court's opinion certifying the above question to this court. See Lockhart v. Cedar Rapids Community Sch. Dist., 963 F.Supp. 805 (N.D.Iowa 1997). We will not repeat the facts and history of this matter other than to say that the viability of Lockhart's remaining claims depends on whether he had a property interest in his employment. Id. at 827. That issue, in turn, hinges on whether Lockhart's employment was at will. See id. See generally Bishop v. Wood, 426 U.S. 341, 344, 345 n. 8, 96 S.Ct. 2074, 2077, 2077 n. 8, 48 L.Ed.2d 684, 690, 690 n. 8 (1976) (noting if state law provides that an employee may be dismissed only "for cause," the employee has a property interest in employment).

### II. Employment Status of Public Employees Under the Common Law.

Before we begin our analysis of section 20.7(3), it is helpful to briefly summarize the common law principles governing a public employee's employment in the absence of a statute altering these legal propositions. We first note that under the common law public employees were presumed to be employed at will. See Van Baale v. City of Des Moines, 550 N.W.2d 153, 156 (Iowa 1996); see also Lee v. Halford, 540 N.W.2d 426, 429 (Iowa 1995) (observing that "the contractual rights of public employees are largely a creature of statute"). Employment at will has traditionally been defined to permit an employer to discharge an employee for any reason or for no reason at all. See French v. Foods, Inc., 495 N.W.2d 768, 769 (Iowa 1993). Consistent with this traditional definition of the doctrine,

we have noted: "In the absence of a valid employment contract either party may terminate the relationship without consequence." Anderson v. Douglas & Lomason Co., 540 N.W.2d 277, 281 (Iowa 1995) (emphasis added).

These characterizations of the doctrine do not, however, reflect the current formulation of an employer's rights vis-a-vis an at-will employee. In Springer v. Weeks & Leo Co., 429 N.W.2d 558, 559–60 (Iowa 1988), this court held that some reasons for discharge are not permissible even in an employment-at-will situation. In that case, we recognized that "even under employment-at-will relationships," an employee has "a remedy for damages [ ] when the employment is terminated for reasons contrary to public policy." Id.

Since our Springer decision, we have labeled this remedy an "exception" to the employment-at-will doctrine. E.g., Anderson, 540 N.W.2d at 282; Fogel v. Trustees of Iowa College, 446 N.W.2d 451, 455 (Iowa 1989). In reality, however, it operates as a modification of that doctrine. As we recognized in Springer, even an at-will employee may not be terminated for any reason without consequence. Thus, the modern employment-at-will doctrine is perhaps more aptly described as one that permits termination at any time for any lawful reason, that is, a reason that is not contrary to public policy. See Fogel, 446 N.W.2d at 455 ("The district court determined that Fogel was an at-will employee whose employment could be terminated at any time, for any lawful reason. This common law doctrine of employment at-will is firmly rooted in Iowa law.").

### III. The Positions of the Parties.

Lockhart claims section 20.7(3) alters the at-will employment status of public employees and limits the school district's authority to terminate his employment to instances of "proper cause." Lockhart asserts this term—"proper cause"—has the same meaning as "just cause" or "for cause." We have given the phrases "just cause" and "for cause" the same meaning when used in stat-

utes governing the termination of public employees. *Compare Briggs v. Board of Dirs.,* 282 N.W.2d 740, 743 (Iowa 1979) (just cause), *with Hawkinson v. Louisa County Civil Serv. Comm'n,* 431 N.W.2d 350, 353 (Iowa 1988) (for cause).[1]

The school district argues section 20.7(3) does not impose a "just cause" or "for cause" limitation on the termination of public employees, but merely prohibits a discharge improper under the law. Under this interpretation of the statute, contends the school district, section 20.7(3) merely confirms a public employee's at-will status.

### IV. *Interpretation of Section 20.7(3).*

A. *Principles of statutory interpretation.* Our goal in interpreting a statute is to give effect to the intent of the legislature. *See State v. Kidd,* 562 N.W.2d 764, 765 (Iowa 1997). That intent is shown by the words used in the statute. *See State v. Adams,* 554 N.W.2d 686, 689 (Iowa 1996). "When the text of a statute is plain and its meaning clear, the court should not search for a meaning beyond the express terms of the statute or resort to rules of construction." *Henriksen v. Younglove Constr.,* 540 N.W.2d 254, 258 (Iowa 1995); *accord In re Marriage of Engler,* 532 N.W.2d 747, 750 (Iowa 1995). On the other hand, when the language of the statute is ambiguous, we use rules of statutory interpretation to assist us in ascertaining legislative intent. *See State v. Ahitow,* 544 N.W.2d 270, 272 (Iowa 1996). A statute is ambiguous when reasonable minds differ or are uncertain as to its meaning. *See State v. White,* 545 N.W.2d 552, 555 (Iowa 1996). Thus, our first task is to decide whether the meaning of section 20.7(3) is clear from the words used in the statute, or whether the statute is ambiguous.

B. *Common usage of words.* Because the parties disagree on the meaning of the term "proper cause," we focus on that language in the statute. In construing this phrase, we follow the statutory rule that "[w]ords and phrases shall be construed according to the context and the approved usage of the language." Iowa Code § 4.1(38). We begin our analysis by referring to the common meaning of these words. *See Kidd,* 562 N.W.2d at 765.

The word "cause" is defined as "a reason or motive for an action or condition." *Webster's Third New International Dictionary* 356 (unabr. ed.1993). The dictionary definition of the word "proper" is less precise: "sanctioned as according with equity, justice, ethics, or rationale <to administer ~ punishment to the perpetrators of these crimes— F.D. Roosevelt> <an adverse wind had so delayed him that his cargo brought but half its ~ price —Amy Lowell>." *Id.* at 1817. The nuances of the term "proper" are illustrated by the diverse words having a similar meaning. In *Roget's International Thesaurus,* the word "proper" is included in an entry under the category "justice":

*just,* fair, square, fair and square; equitable, balanced, level <nonformal>, even, evenhanded; right, rightful; justifiable, justified, warranted, warrantable, defensible; due ..., deserved, merited; meet, meet and right, right and proper, fit, proper, good, as it should or ought to be; *lawful,* legal. . . .

*Roget's International Thesaurus* 456 (Robert L. Chapman ed., 5th ed.1992) (emphasis added). Both of the synonyms for "proper" advanced by the parties—just and lawful—are included in this entry.

We conclude the precise meaning of the term "proper cause" is not clear from an examination of the common usage of this term. Consequently, we turn to an examination of the context in which the phrase is found. *See* Iowa Code § 4.1(38) (stating phrase must be construed according to its context as well as its approved usage).

---

**1.** There is no all-encompassing definition of "just cause." *See Briggs,* 282 N.W.2d at 743. This term does encompass, however, reasons that relate to an employee's performance of his or her job and the impact of that performance on an employer's ability to attain its reasonable goals. *See id.; Board of Dirs. v. Simons,* 493 N.W.2d 879, 884 (Iowa App.1992). "Just cause" also includes reasons based on an employer's legitimate budgetary or personnel requirements, unrelated to employee fault. *See Briggs,* 282 N.W.2d at 742; *Southeastern Community College v. Krieger,* 535 N.W.2d 140, 143 (Iowa App.1995). "Just cause" does not include "reasons which are arbitrary, unfair, or generated out of some petty vendetta." *Briggs,* 282 N.W.2d at 743.

C. *Context of words.* Section 20.7(3) is part of the Public Employment Relations Act, which addresses the relationship between the government and its employees, primarily with respect to collective bargaining. *See id.* § 20.1 (setting forth public policy addressed in chapter 20). Section 20.7, specifically, is that part of the Act setting forth the rights of public employers. *See id.* § 20.7.

We are prompted to two observations based on the context in which the disputed language is found. First, the language is found in a chapter dealing primarily with collective bargaining as opposed to personnel administration. Section 20.1 states: "The general assembly declares that it is the public policy of the state to promote harmonious and co-operative relationships between government and its employees *by permitting public employees to organize and bargain collectively . . . .*" (Emphasis added.) In contrast, section 19A.2A, found in the chapter creating the state department of personnel, states: "The general purpose of this chapter is to establish for the state of Iowa a system of personnel administration based on merit principles and scientific methods *to govern the . . . removal and discipline of its civil employees . . . .*" (Emphasis added.) There is no statement of purpose in chapter 20 that supports an interpretation that chapter 20 has even a remotely similar purpose to chapter 19A.

The second observation we make is that the disputed language is found in a section dealing with *employers'* rights, not in the following section, section 20.8, setting forth public *employees'* rights. The interpretation of section 20.7(3) urged by Lockhart would impose a *limitation* on a public employer's common law right to terminate an employee. Viewed from an employee's perspective, this interpretation would establish an employee's right to damages for a discharge not supported by just cause, a right not enjoyed at common law. Such a change in the common law would more logically be characterized as the recognition of an *employee* right. Therefore, it is illogical that the legislature would have so substantially altered the common law in a statute listing the *rights of employers.*

D. *Holding.* In examining the context in which the "proper cause" language appears, we conclude the legislature did not intend to establish a just-cause limitation on the right of a public employer to discharge an employee. The legislature's intent in section 20.7(3) was merely to restate the public employer's common law right to terminate an employee at will for any lawful reason, in other words, one not violative of public policy.

Such a restatement of the common law is not meaningless, as suggested by Lockhart. "The only powers of a school district are those expressly granted or necessarily implied in governing statutes." *Northeast Community Educ. Ass'n v. Northeast Community Sch. Dist.,* 402 N.W.2d 765, 767 (Iowa 1987). Therefore, section 20.7(3) serves the useful purpose of granting school districts the necessary power to suspend and terminate employees. *See id.* at 768. As we have just held, that power is coextensive with the common law right of employers to terminate at-will employees for any reason not inconsistent with a well-defined public policy.

It is true that the common law statement of employment at will allows the termination of an employee for no reason at all, a concept not expressed in section 20.7(3). Nevertheless, the legislature's statement of the employment-at-will doctrine in section 20.7(3) is not a substantial deviation from the common law by virtue of this omission because, as a practical matter, there is always a cause for an employee's termination—some motivation or reason prompting the employer to discharge the employee. The traditional statement that an employer could terminate an employee for no reason at all merely emphasized the fact that, no matter what the reason for termination, the discharge of an employee at will was not actionable. This concept, as modified by our cases limiting nonliability to terminations for any reason not contrary to public policy, is clearly embodied in section 20.7(3).

Because the common meanings of the words used in section 20.7(3) and the context

within which those words are used clearly indicate the intent of the legislature, it is not necessary to consider rules of statutory interpretation.

We hold section 20.7(3) does not change the common law presumption that public employees are employed at will.[2] Therefore, we answer the certified question "no."

**CERTIFIED QUESTION ANSWERED.**

---

2. Lockhart relies on our decisions in *Norton v. Adair County*, 441 N.W.2d 347, 362 (Iowa 1989) and *Northeast Community*, 402 N.W.2d at 768, to support his view that section 20.7(3) modifies the employment-at-will status of public employees. As Lockhart acknowledges, however, the precise meaning of "proper cause" as used in section 20.7(3) was not directly addressed in *Norton* and *Northeast Community*. In any event, we disavow any statements made in the *Norton* and *Northeast Community* decisions to the extent they are inconsistent with the interpretation of section 20.7(3) we adopt here.