Michael P. O'HARA, Appellant,

v.

STATE of Iowa, Iowa Department of General Services, AFSCME Iowa Council 61, and AFSCME Local 35, Appellees.

No. 00–0211.

Supreme Court of Iowa.

April 3, 2002.

Kevin M. Kirlin of Roehrick, Hulting, Krull & Blumberg, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General and Grant K. Dugdale, Assistant Attorney General, for appellees State of Iowa and Iowa Department of General Services.

Michael E. Hansen, Des Moines, for appellee AFSCME Iowa Council 61.

MacDonald Smith of Smith & McElwain, Sioux City, for amicus curiae Iowa Federation of Labor, AFL–CIO.

LAVORATO, Chief Justice.

Michael O'Hara appeals from a district court ruling dismissing his claims against AFSCME Iowa Council 61, AFSCME Local 35, the State of Iowa, and the Iowa Department of General Services. In this appeal, we must address the effect of 1990 amendments to Iowa Code chapter 20 (Public Employment Relations Act or PERA) on our decision in *Norton v. Adair County*, 441 N.W.2d 347 (Iowa 1989). Specifically, we must determine whether the Public Employment Relations Board (PERB) has exclusive, original jurisdiction over public employee claims against (1) the union for breach of the duty of fair representation, and (2) the public employer for breach of the collective bargaining agreement. In addition, we must decide whether a public employee has a right to a jury trial on the employee's claim for breach of the fair representation duty.

We agree with the district court that it lacked subject matter jurisdiction over O'Hara's claims against the unions and that O'Hara has no right to a jury trial on his claim for breach of the fair representation duty. We therefore affirm on those issues. Because we conclude the district court erred in holding it lacked subject matter jurisdiction over O'Hara's claim against the State and the Iowa Department of General Services, we reverse and remand for further proceedings on that claim.

## I. Scope of Review.

We review the district court's ruling on a motion to dismiss for correction of errors at law. Iowa R.App. P. 6.4; *McCormick v. Meyer*, 582 N.W.2d 141, 144 (Iowa 1998). "A motion to dismiss admits the well-pleaded facts in the petition and waives any ambiguity or uncertainty." *Tate v. Derifield*, 510 N.W.2d 885, 887 (Iowa 1994). The allegations of the petition are therefore taken as true. *Stess-*

*man v. Am. Black Hawk Broadcasting Co.*, 416 N.W.2d 685, 686 (Iowa 1987).

## II. Background Facts and Proceedings.

The petition alleges the following relevant facts which we accept as true for the purpose of determining whether the district court's ruling was correct. The Iowa Department of General Services (IDGS) employed O'Hara from April 1, 1974, through May 15, 1995. At the times material to this action, O'Hara was living in a monogamous homosexual relationship. His co-workers and supervisors knew of his sexual orientation and his relationship.

On April 17, 1995, a fifteen-year-old male student intern working for the IDGS accused O'Hara of making homosexual advances toward him in a restroom at work. O'Hara denied the accusations. The IDGS terminated O'Hara's employment effective May 15, 1995. At the time the IDGS terminated his employment, O'Hara worked as a Maintenance Worker II, a position within the collective bargaining unit governed by a collective bargaining agreement between the State of Iowa and the American Federation of State, County, and Municipal Employees, Iowa Council 61 (Union).

O'Hara grieved the termination and requested assistance from the Union. Under the collective bargaining agreement, the employer may suspend, discipline, or discharge employees for proper cause. Employees may grieve their discharge through four steps, up to and including binding arbitration, subject to certain time limitations.

The Union represented O'Hara at a third-step grievance hearing before a Labor Relations Specialist of the Iowa Department of Personnel (IDOP). On September 21, 1995, the Labor Relations

Specialist issued a decision upholding the termination of O'Hara's employment. O'Hara asked for the Union's assistance to appeal the decision to the director of the IDOP and to take the grievance to arbitration pursuant to the collective bargaining agreement. The Union appealed the decision.

Subsequently, a Union representative asked O'Hara to submit to a polygraph examination. The Union refused to take any further action on O'Hara's grievance until he consented to the examination. O'Hara submitted to the polygraph examination on January 4, 1996, following which the Union declined to process the grievance further. The Union may have advised the IDGS of the examination and the results.

On January 9, 1996, the Union advised O'Hara that it was withdrawing his grievance from arbitration. The Union gave O'Hara five reasons for its action: (1) it was O'Hara's word against the student intern's word; (2) O'Hara had no witnesses; (3) the intern had four witnesses, all of whom were O'Hara's co-workers; (4) the depth of the accusations, because the intern was a minor; and (5) O'Hara failed the polygraph test.

O'Hara appealed the Union's decision to withdraw his grievance. He told the Union of medical conditions that likely affected the results of the polygraph and offered to authorize the Union to consult with his physicians to confirm the medical conditions. The Union did not consult with the physicians. Rather, in a letter dated March 20, 1996, the Union advised O'Hara it would take no further action on his grievance.

On June 14, 1996, O'Hara filed a prohibited practice complaint against the Union with the PERB. He alleged that the Union engaged in prohibited practices within the meaning of Iowa Code section 20.17(1) (1995). Specifically, O'Hara alleged that The Union breached its duty of fair representation and acted in an arbitrary and discriminatory manner, and in bad faith, by:

1. Failing to promptly investigate the allegations upon which the employer based the termination of his employment.

2. Failing to obtain a neutral forum for resolution of his grievance.

3. Requiring him to consent to a polygraph examination as a condition of representing him on his grievance.

4. Advising the employer's representatives that he took a polygraph examination and of the results.

5. Abandoning its role as an advocate in favor of that of a judge of the facts.

6. Declining to represent him on the basis of his sexual orientation.

On July 25, 1996, the Union filed several motions with the PERB, including a motion to dismiss and a motion to join the employer/State as a party respondent. An administrative law judge denied both motions. The Union filed an interlocutory appeal, which the PERB granted.

On October 23, 1998, while his prohibited practice complaint was still pending before the PERB, O'Hara filed an action in the district court against the State of Iowa and the IDGS (hereinafter referred to collectively as the State). He alleged that the State had breached the collective bargaining agreement between the State and the Union by terminating his employment without just cause, and discriminating against him on the basis of his sexual orientation.

On April 11, 1999, the State moved to dismiss, contending that the district court lacked subject matter jurisdiction, based

on recent amendments to Iowa Code chapter 20. A month later, O'Hara filed a jury demand and a resistance to the motion to dismiss.

On June 10, 1999, O'Hara filed an amended and substituted petition. (This was after the PERB had denied the Union's motion to join, but before the PERB ruling granting the Union's interlocutory appeal.) O'Hara joined the Union and AFSCME Local 35 (hereinafter collectively referred to as the Union). He alleged that the Union breached its duty of fair representation in its processing of his grievance, alleging the same six grounds that he alleged in the prohibited practice complaint that he filed with the PERB.

On July 8, 1999, the Union moved to dismiss the amended and substituted petition, alleging the district court lacked subject matter jurisdiction because of the recent amendments to Iowa Code chapter 20. These were the same amendments the State relied on in its motion to dismiss O'Hara's petition against it.

On December 30, 1999, the district court granted the Union's motion to dismiss, concluding that the recent amendments to chapter 20 gave the PERB exclusive original jurisdiction over fair representation claims. The court rejected O'Hara's claim that the amendments denied him the constitutional right to a jury trial.

Shortly thereafter, in response to O'Hara's motion to amend and enlarge the court's ruling on the Union's motion to dismiss, the district court granted the State's motion to dismiss for lack of subject matter jurisdiction.

O'Hara appealed and the Union cross-appealed.

While this appeal was pending, O'Hara and the State filed a stipulated motion for summary reversal. The State asked us to reverse the district court's ruling on its motion to dismiss because "upon more extensive and detailed research on appeal, [the State] must concede that its motion to dismiss and the district court's subsequent ruling based on that motion was in error." The Union filed a resistance.

We ordered the parties to brief and submit with the appeal the issue of whether the district court has subject matter jurisdiction of the claim against the State for breach of the collective bargaining agreement.

### III. Issues.

O'Hara concedes that recent amendments to chapter 20 give the PERB exclusive original jurisdiction over his claim against the Union for breach of its duty of fair representation. However, he argues that the amendments are unconstitutional, because they deny him his right to a jury trial, equal protection, and due process.

In addition, O'Hara contends that chapter 20, as amended, does not deprive the district court of subject matter jurisdiction over his claims against the State for breach of the collective bargaining agreement.

As mentioned, the State concedes the district court has subject matter jurisdiction over O'Hara's claims against it. O'Hara and the State therefore urge us to reverse the district court's ruling on the State's motion to dismiss.

The Union, however, argues that the district court did not err in dismissing O'Hara's action against *all* defendants, including the State. The Iowa Federation of Labor filed an amicus curiae brief in support of the Union's position.

### IV. Subject Matter Jurisdiction.

**A. Background.** In 1989, we held that the district court has concurrent jurisdiction with the PERB over a public employee's action against the union for alleged

violations of the union's statutory duty of fair representation. *Norton*, 441 N.W.2d at 354. We explained that federal and state courts have concurrent jurisdiction with the National Labor Relations Board (NLRB) over fair representation actions brought by private employees covered by the federal Labor Management Relations Act (LMRA), after which the PERA is patterned. *Id.* at 351–52. We determined that "nothing in Iowa Code chapter 20 indicates that the legislature intended to depart from the federal approach with respect to jurisdiction of the courts over fair representation suits brought by public employees." *Id.* at 354. Moreover, following the federal concurrent approach would not result in an inconsistent development of substantive law on the issue of fair representation because the district court and the PERB "would presumably look to the same body of law on this issue." *Id.* We also determined that the courts were in a better position than the PERB to protect individual rights because the PERB had no remedial power to cause reinstatement of employees with back pay. *Id.*

We adopted a five-year statute of limitations for actions brought in district court alleging a union's breach of the fair representation duty. *Id.* at 355. We adopted a five-year limitation period in part because the closest analogy to an action for breach of duty of fair representation is a claim for legal malpractice. *Id.* Both actions challenge the adequacy of representation and circumstances requiring specialized knowledge in advocacy skills. *Id.* We noted, however, the disparity created by adopting a five-year statute of limitations for fair representation suits brought by public employees when compared to the limitation period for the same court action brought by private-sector employees under the LMRA (six months). *Id.* We invited the legislature to "address the issue and fix a more suitable statute of limitations that

strikes a better balance between the employee's individual interest in prosecuting a grievance and the public's interest in expeditiously resolving public sector disputes." *Id.*

In response to our *Norton* decision, the legislature amended certain provisions of chapter 20 in 1990. House File 2460 amended section 20.1 by deleting the italicized language and adding the underlined language as indicated:

[T]he powers and duties of the board include ...

2. Adjudicating prohibited practice complaints *and fashioning appropriate remedial relief for violations of this chapter* including the exercise of exclusive original jurisdiction over all claims alleging the breach of the duty of fair representation imposed by section 20.17.

3. Fashioning appropriate remedial relief for violations of this chapter, including but not limited to the reinstatement of employees with or without back pay and benefits.

1990 Iowa Acts ch. 1037, §§ 1, 2 (codified at Iowa Code § 20.1 (1995)).

In addition, the legislature added the following language to section 20.17(1):

To sustain a claim that a certified employee organization has committed a prohibited practice by breaching its duty of fair representation, a public employee must establish by a preponderance of evidence action or inaction by the organization which was arbitrary, discriminatory, or in bad faith.

1990 Iowa Acts ch. 1037, § 3 (codified at Iowa Code § 20.17(1)).

The legislature did *not* amend section 20.17(5), which provides:

Terms of any collective bargaining agreement may be enforced by a civil action in the district court of the county

in which the agreement was made upon the initiative of either party.

Iowa Code § 20.17(5). Failure of the legislature to amend this provision is crucial to a resolution of the subject-matter-jurisdiction issue as our analysis of the issue will show.

**B. Parties' Contentions.** To better understand the dilemma the amendments pose, we set out the various contentions of the parties as well as the amicus.

**1. O'Hara.** As mentioned, O'Hara concedes the 1990 amendments granted the PERB exclusive original jurisdiction over his claims against the Union for breach of its duty of fair representation. However, he argues, the amendments do not deprive the district court of jurisdiction over his claims against the State for breach of the collective bargaining agreement. He relies on a literal interpretation of the statute as amended.

He begins by noting that section 20.1(2), as amended, gives the PERB exclusive original jurisdiction over claims alleging breach of the duty of fair representation imposed by section 20.17. *See* Iowa Code §§ 20.1(2) (providing that the PERB has the power and duty to "[a]djudicat[e] prohibited practice complaints *including the exercise of exclusive original jurisdiction over all claims alleging the breach of the duty of fair representation imposed by section 20.17*") (emphasis added); 20.17(1) ("The employee organization certified as the bargaining representative ... shall represent all public employees fairly."). The public employer has no duty of fair representation under section 20.17 or any other statute. Only the union has such a duty.

Moreover, O'Hara points out, section 20.17(1), as amended, establishes the burden of proof that public employees must satisfy to "sustain a claim that a *certified employee organization* has committed a

prohibited practice...." Iowa Code § 20.17(1) (emphasis added). The statute does not indicate the type or quantum of proof necessary to sustain a claim against the public employer.

Finally, O'Hara notes, while section 20.1(3), as amended, gives the PERB the power to order reinstatement of employees with or without back pay and benefits for violation of chapter 20, this provision does not explain whether and how the PERB could order reinstatement, back pay, or benefits in a prohibited practice case to which the public employer is not a party.

**2. The State.** The State points to *Norton* and section 20.17(5) to support O'Hara's position. In *Norton* we relied in part on section 20.17(5), which provides that the "[t]erms of any collective bargaining agreement may be enforced by a civil action in the district court ...upon the initiative of either party." Iowa Code § 20.17(5). We indicated that this "broad enforcement provision ... clearly denotes ... legislative intent" to follow the federal approach to fair representation suits. *Norton*, 441 N.W.2d at 354. We concluded that employees, as third-party beneficiaries of collective bargaining agreements, have standing to bring an action in district court pursuant to section 20.17(5) for breach of collective bargaining agreements.

The State argues as follows. The amendments did not alter section 20.17(5), but rather only addressed fair representation claims against the union. The failure to amend section 20.17(5) to prohibit employee suits in the district court for breach of the collective bargaining agreement means an employee can still bring an action against the employer in the district court for breach of such agreements. However, because of the amendments, the employee can only bring an action against

the union for breach of the union's duty of fair representation before the PERB. The legislature "created a bifurcated approach to resolution of these related claims," granting to the PERB exclusive original jurisdiction over claims for breach of the union's duty of fair representation, and the district court jurisdiction over claims for breach of collective bargaining agreements.

3. **The Union.** In contrast to O'Hara's and the State's arguments, the Union contends the plain meaning and intent of the amendments indicate the legislature granted the PERB exclusive original jurisdiction over "all claims arising out of" an alleged breach of the duty of fair representation. According to the Union, the legislature did not include an exception that "an employer's contract violation arising from a fair representation violation shall be before the court," and this court cannot amend the statute to include such an exception.

Moreover, the Union argues, the PERB cannot reinstate an employee, as section 20.1(3) directs, unless it has exclusive original jurisdiction over the union, the employee, *and* the public employer. The public employer is therefore a necessary party to the fair representation proceedings.

To further bolster its position, the Union argues that fair representation claims consist of two elements: (1) the union's violation of the duty of fair representation, *and* (2) the employer's breach of the collective bargaining agreement. The Union insists that to establish a breach of the fair representation duty, an employee must prove *both* elements.

In this case, O'Hara filed his action against the Union with the PERB within the ninety-day statute of limitations period in Iowa Code section 20.11(1). He failed to file his suit with the PERB against the State within that period of time. For this reason, the Union asserts, O'Hara's action against the State is time-barred and he should not be permitted to substitute the jurisdiction of the district court for that of the PERB.

As for the State's argument relating to section 20.17(5), the Union asserts that this provision was originally passed for the *sole* purpose of allowing the union and the public employer access to the courts for enforcement of arbitration awards involving violation of the collective bargaining agreement because the PERB does not have jurisdiction to take such action. The Union therefore concludes that the parties to the union contract for purposes of section 20.17(5) are the union and the employer, not the employee. This conclusion, of course, is in direct conflict with our *Norton* holding that the employee is a third-party beneficiary of the union contract, a holding that we reaffirm here. *Norton,* 441 N.W.2d at 354.

4. **The amicus.** The amicus contends the term "all claims" in section 20.1(2) includes claims by public employees against the employer for breach of the collective bargaining agreement. In support of its contention, the amicus relies on the legal doctrine governing "hybrid" cases. In such cases, the amicus argues, an employee is required to allege and prove the union breached its duty of fair representation as a prerequisite to recovering for a claimed breach of the collective bargaining agreement against the employer. Therefore, all "hybrid" claims against the employer necessarily involve claims alleging the union's breach of its fair representation duty. The amicus explains that because the legislature presumably knew this basic law regarding "hybrid" duty of fair representation cases, it is most reasonable to conclude that it understood and intended the term "all

claims" as used in section 20.1(2) to include claims against employers as well as unions.

The amicus explains further that in "hybrid" cases where both the union and the employer are defendants, either both or neither must be liable. The amicus points out, however, that in *Norton* the court upheld the district court's ruling that the employer committed no breach of contract, but also upheld a jury verdict against the union based on its breach of the fair representation duty. (Actually, we upheld the district court's summary judgment ruling in favor of the employer-county on the grounds that Norton had only an at-will employment with the county and therefore could be dismissed at any time for any reason. *Norton*, 441 N.W.2d at 361). Therefore, the amicus concludes, "the same set of facts produced contradictory results and disparate treatment of the employer and the union." The amicus argues that the legislature enacted the amendments to correct this anomalous result.

In addition, the amicus points to language in section 20.1(3), which gives the PERB authority to fashion an appropriate remedy "for violations of this chapter." This language, the amicus argues, is evidence that the legislature intended that the PERB be the sole body to determine all claims involving alleged violations of the fair representation duty, including claims against the employer in "hybrid" cases. This is so, the amicus explains, because only the employer, and not the union, can be ordered to reinstate with back pay an employee damaged through a breach of the collective bargaining agreement.

The amicus makes several other arguments. First, its reading of the statute results in the employee receiving what the employee would have received if grievance procedures had not broken down. *See* Iowa Code § 20.1(4) (PERB serves as ar-

bitrator in resolving grievance disputes). Second, its reading is also consistent with the damages principle of contract law that a party should be put in the same position it would have been in but for the breach. Last, its reading establishes a uniform statute of limitations requiring prompt assertion of "hybrid" claims, which promotes greater certainty and stability for the employer's governmental operations. The amicus notes that O'Hara's reading of the statute creates the problem of split jurisdiction noted by the court in *Norton*, where the court awards relief against the employer and leaves it to the PERB to fashion relief against the union. *See Norton*, 441 N.W.2d at 354.

**C. Analysis.** The arguments the Union and the amicus make may convince the legislature to amend chapter 20 again at some future date, but they cannot overcome our duty to interpret the amendments as written. For reasons that follow, we agree with O'Hara and the State that the amendments do not deprive the district court of subject matter jurisdiction over an employee's claim for breach of a collective bargaining agreement against the employer.

Section 20.1(2) gives the PERB exclusive original jurisdiction over all claims alleging a breach of the fair representation duty imposed by section 20.17. This duty is codified in section 20.17(1), which provides that the "*employee organization* certified as the bargaining representative [the union] ... shall represent all public employees fairly." Iowa Code § 20.17(1) (emphasis added). By the plain language of the statute, the duty applies *only* to the union.

To meet the burden of proving that "a *certified employee organization* [the union] has committed a prohibited practice by breaching its duty of fair representa-

tion," the public employee "must establish by a preponderance of the evidence action or inaction *by the organization* which was arbitrary, discriminatory, or in bad faith." Iowa Code § 20.17(1) (emphasis added). Again, by the plain language of the statute, the fair representation duty applies *only* to the union.

The foregoing statutory language clearly and plainly provides that the PERB has exclusive original jurisdiction over claims of breach of the fair representation duty. No one disputes this.

The amendments are silent, however, when it comes to a public employee's claims against a public employer for breach of a collective bargaining agreement. The amendments did not add language to address claims for breach of a collective bargaining agreement. Nowhere in chapter 20 is there any mention about jurisdiction over such claims and the proof required to establish those claims. Moreover, the amendments made no change to section 20.17(5), which permits "either party" to a collective bargaining agreement to enforce the terms of such agreements in a civil action in the district court. And, as mentioned, we held in *Norton* that the language of section 20.17(5) was "broad enough to include ... a third-party beneficiary [such as] the employee." *Norton*, 441 N.W.2d at 354.

■■ Therefore, a reading of the plain language of chapter 20, as amended, leads to the conclusion that (1) the PERB has exclusive original jurisdiction over a public employee's claim for breach of the fair representation duty against the union, and (2) a public employee may raise a claim for breach of a collective bargaining agreement against the public employer in the district court.

The district court therefore correctly held that it lacked subject matter jurisdiction over O'Hara's claim for breach of the Union's duty of fair representation. However, the court erred in holding that it lacked such jurisdiction over O'Hara's claim against the State for breach of the collective bargaining agreement.

**D. Response.** Notwithstanding the plain meaning of chapter 20, as amended, we think we should address some of the Union's and amicus's arguments.

To begin, the Union's interpretation of chapter 20, as amended, is flawed in several respects. The Union throughout its brief continually refers to "all cases *arising out of* a fair representation violation." Chapter 20, as amended, contains no such "arising out of" language. Additionally, the Union contends the amendments give the PERB "exclusive jurisdiction" to fashion an appropriate remedy, including reinstatement of the employee. Chapter 20, as amended, contains *no* language to this effect.

■ Regarding the amicus's discussion about "hybrid claims," we agree that a "hybrid" claim and a claim for a breach of a fair representation duty are related. However, we do not agree that they are interchangeable. The United States Supreme Court has made this clear:

> [A hybrid] suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging breach of the collective-bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. "Yet *the two claims are inextricably interdependent. 'To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of*

*duty by the Union.'" The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.* The suit is thus not a straightforward breach of contract suit under § 301 .... but a hybrid § 301/fair representation claim, amounting to "a direct challenge to 'the private settlement of disputes under [the collective-bargaining agreement].'"

*DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 164–65, 103 S.Ct. 2281, 2290–91, 76 L.Ed.2d 476, 489 (1983) (citations and footnote omitted) (emphasis added); *accord Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6,* 493 U.S. 67, 80, 110 S.Ct. 424, 432–33, 107 L.Ed.2d 388, 404–05 (1989).

Our PERA is patterned after the federal LMRA. *Norton,* 441 N.W.2d at 351. So in construing the PERA, we often look to the construction of analogous provisions of the LMRA. *Id.* In the federal context, the NLRB has exclusive jurisdiction over unfair labor charges. *Id.* However, section 301 of the LMRA, 29 U.S.C. § 185, permits a court suit for breach of a collective bargaining agreement regardless of whether the particular breach is also an unfair labor practice within the jurisdiction of the NLRB. *Id.* at 352 (citing *Vaca v. Sipes,* 386 U.S. 171, 179–80, 87 S.Ct. 903, 911, 17 L.Ed.2d 842, 851 (1967)).

We agree with the Union and the amicus that the plain language of chapter 20, as amended, leads to a situation similar to that addressed in *Norton.* A public employee must raise claims against the union for breach of the fair representation duty before the PERB, while at the same time such an employee may raise a claim for breach of a collective bargaining agreement in the district court. This could lead

to several practical problems. The employee could have two separate actions before two separate tribunals, both addressing the same set of facts.

Moreover, chapter 20, as amended, permits the PERB to reinstate the employee with or without back pay. Unless the employee chooses to join the employer in its action against the union before the PERB, the agency would not have jurisdiction to enforce this remedy against the employer.

In fact, by granting the PERB exclusive original jurisdiction over claims against the union for breach of its duty of fair representation, the legislature has left public employees with uncertain remedies against the union for breach of such duty. Under section 20.1, the PERB has authority to "fashion[ ] appropriate remedial relief ... including but not limited to the reinstatement of employees with or without back pay and benefits." Iowa Code § 20.1(3). This case does not answer the question of exactly what remedies the PERB can offer public employees under the language "including but not limited to." Section 20.11 is the only provision that *expressly* mentions remedies the PERB could fashion. Those include (1) "enter[ing] into a consent order with [the union] to discontinue the practice," or (2) "petition[ing] the district court for injunctive relief...." Iowa Code § 20.11(4).

Finally, a public employee has ninety days from the date of the alleged violation to raise a claim for breach of a fair representation duty against the union with the PERB. *See* Iowa Code § 20.11(1). The same employee, however, would have ten years to raise a claim for breach of a collective bargaining agreement in the district court. *See* Iowa Code § 614.1(5) (ten-year statute of limitations period for written contracts). A difference in the applicable statute of limitations caused by the

choice of forum led this court in *Norton* to urge the legislature to change the five-year statute of limitations thereby "strik[ing] a better balance between the employee's individual interest in prosecuting a grievance and the public's interest in expeditiously resolving public sector disputes." *Norton*, 441 N.W.2d at 355.

To solve the dilemma posed by the amendments, we must read into chapter 20, as amended, language that simply is not there. This, of course, is not within our province. We are bound by what the legislature said, not by what it should or might have said. *Krull v. Thermogas Co.*, 522 N.W.2d 607, 612 (Iowa 1994). Moreover, we "may not add words or change terms under the guise of judicial construction." *Henriksen v. Younglove Constr.*, 540 N.W.2d 254, 258 (Iowa 1995).

## V. Constitutional Issues.

**A. Scope of review and preservation of error.** We review constitutional claims de novo. *Channon v. United Parcel Serv. Inc.*, 629 N.W.2d 835, 852 (Iowa 2001). A party challenging a statute carries a heavy burden of rebutting the presumption of constitutionality with which statutes are cloaked. *Id.* The party must negate every reasonable basis upon which the statute can be upheld as constitutional. *Id.*

O'Hara raised the following constitutional issues in his resistance to the Union's motion to strike and/or dismiss: right to jury trial, equal protection, and due process. The district court's ruling on the motion addressed only the right-to-jury-trial issue.

A motion under Iowa Rule of Civil Procedure 1.904(2) (formerly Iowa Rule of Civil Procedure 179(b)) is essential to preserve error when a district court fails to resolve an issue, claim, defense, or legal theory properly submitted to it for adjudication. *State Farm Mut. Auto. Ins. Co. v. Pflibsen*, 350 N.W.2d 202, 206 (Iowa 1984); *see* Iowa R. Civ. P. 1.904(2). O'Hara filed a motion to amend and enlarge the court's ruling, but did not ask the court to address the equal protection and due process issues. He therefore did not properly preserve these constitutional issues for our review. *See State v. Mulvany*, 600 N.W.2d 291, 293 (Iowa 1999) ("[W]e require error preservation even on constitutional issues."); *Pflibsen*, 350 N.W.2d. at 207 ("Issues must ordinarily be presented to and passed upon by the trial court before they may be raised and decided on appeal.").

**B. Right to jury trial.** The Seventh Amendment of the Federal Constitution preserves the right to trial by jury. U.S. Const. amend. VII. This amendment, however, does not apply to the states. 47 Am.Jur.2d *Jury* § 5, at 716 (1995). Therefore, no federal constitutional right to a jury trial exists in state court. *Channon*, 629 N.W.2d at 852.

Article one, section nine of the Iowa Constitution provides that "the right of trial by jury shall remain inviolate." Iowa Const. art. I, § 9. There is no right to trial by jury in special proceedings under the Iowa Constitution. *Smith v. ADM Feed Corp.*, 456 N.W.2d 378, 382 (Iowa 1990). Iowa Code section 611.2 classifies actions in the district court as of two types: civil and special. Iowa Code § 611.2. Judicial review of an agency action is a special action *as recognized in section 611.2. Iowa West Racing Ass'n v. Iowa Racing & Gaming Comm'n*, 578 N.W.2d 663, 664 (Iowa 1998). There is therefore no right to trial by jury where judicial review of an agency action is involved.

Iowa Code section 20.11 governs the procedure for "[p]roceedings against a party alleging a violation of section 20.10"—the prohibited practices provision. Iowa Code § 20.11(1). The proceeding is commenced by a party filing a complaint with the PERB within ninety days of the alleged violation. *Id.* The PERB is an agency within the meaning of Iowa Code chapter 17A—the Iowa Administrative Procedure Act. *Maquoketa Valley Cmty. Sch. Dist. v. Maquoketa Valley Ed. Ass'n,* 279 N.W.2d 510, 512 (Iowa 1979). An administrative law judge hears the complaint and renders a decision, which may be appealed to the PERB. Iowa Code § 20.11(2). The PERB may hear the appeal de novo or upon the record made before the administrative law judge. *Id.* Finally, Iowa Code section 20.11(5) provides that the PERB's "review of proposed decisions and the rehearing or *judicial review* of final decisions is governed by the provisions of chapter 17A." Iowa Code § 20.11(5) (emphasis added).

Because section 20.11(5) provides for judicial review of the PERB's decision, such actions are special proceedings within the meaning of section 611.2. Therefore, there is no right to a jury trial in such proceedings. The district court was correct in so holding.

## VI. Disposition.

Because we conclude the district court correctly held that it lacked subject matter jurisdiction over O'Hara's claim against the Union for breach of its duty of fair representation, we affirm on this issue.

The district court, however, erred in holding that it lacked subject matter jurisdiction over O'Hara's claim against the State for breach of the collective bargaining agreement. We therefore reverse on this issue and remand for further proceedings against the State.

Finally, we conclude that O'Hara has no right to a jury trial on his claim against the Union for breach of its duty of fair representation. We therefore affirm on this issue.

**AFFIRMED IN PART, REVERSED IN PART, AND REMADED.**