# IN THE SUPREME COURT OF IOWA

No. 21–0831

Submitted April 4, 2023—Filed May 26, 2023

**STATE OF IOWA, ex rel., ATTORNEY GENERAL OF IOWA,**

Appellee,

vs.

**TRAVIS AUTOR, REGENERATIVE MEDICINE AND ANTI-AGING INSTITUTES OF OMAHA, LLC,** and **OMAHA STEM CELLS, LLC,**

Appellants.

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.

Appellants claim that the district court erred by striking their jury demand in a civil action under the Iowa Consumer Fraud Act. **AFFIRMED AND REMANDED.**

May, J., delivered the opinion of the court, in which all justices joined.

David N. Fautsch (argued), Mark E. Weinhardt, and Nathan D.B. Converse (until withdrawal) of The Weinhardt Law Firm, Des Moines, for appellants.

Brenna Bird, Attorney General, and Amy Licht (argued), William Pearson, and J. Andrew Cederdahl, Assistant Attorneys General, for appellee.

**MAY, Justice.**

The Iowa Consumer Fraud Act (CFA), Iowa Code section 714.16 (2020), authorizes the attorney general to pursue civil enforcement actions. Subsection 714.16(7) requires that these actions "shall be by equitable proceedings." The defendants contend that this requirement is unenforceable because it violates the jury right preserved by article I, section 9 of the Iowa Constitution. We disagree.

## I. Background.

Through the CFA, our legislature has deemed "a variety of bad business practices unlawful." *State ex rel. Miller v. Cutty's Des Moines Camping Club, Inc.*, 694 N.W.2d 518, 524 (Iowa 2005). But violating the CFA does not "amount[] to perpetration of a crime." *Grinnell Mut. Reins. Co. v. Jungling*, 654 N.W.2d 530, 537 (Iowa 2002) (quoting *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 228 (Iowa 1998)). Instead, subsection 714.16(7) authorizes the attorney general to enforce the CFA through "civil action[s]." Iowa Code § 714.16(7). Because subsection 714.16(7) is at the center of this dispute, we reproduce its full text here:

> 7. A civil action pursuant to [section 714.16] shall be by equitable proceedings. If it appears to the attorney general that a person has engaged in, is engaging in, or is about to engage in a practice declared to be unlawful by this section, the attorney general may seek and obtain in an action in a district court a temporary restraining order, preliminary injunction, or permanent injunction prohibiting the person from continuing the practice or engaging in the practice or doing an act in furtherance of the practice. The court may make orders or judgments as necessary to prevent the use or employment by a person of any prohibited practices, or which are necessary to restore to any person in interest any moneys or property, real or personal, which have been acquired by means of a

practice declared to be unlawful by this section, including the appointment of a receiver in cases of substantial and willful violation of this section. If a person has acquired moneys or property by any means declared to be unlawful by this section and if the cost of administering reimbursement outweighs the benefit to consumers or consumers entitled to the reimbursement cannot be located through reasonable efforts, the court may order disgorgement of moneys or property acquired by the person by awarding the moneys or property to the state to be used by the attorney general for the administration and implementation of this section. Except in an action for the concealment, suppression, or omission of a material fact with intent that others rely upon it, it is not necessary in an action for reimbursement or an injunction, to allege or to prove reliance, damages, intent to deceive, or that the person who engaged in an unlawful act had knowledge of the falsity of the claim or ignorance of the truth. A claim for reimbursement may be proved by any competent evidence, including evidence that would be appropriate in a class action.

In addition to the remedies otherwise provided for in this subsection, the attorney general may request and the court may impose a civil penalty not to exceed forty thousand dollars per violation against a person found by the court to have engaged in a method, act, or practice declared unlawful under this section; provided, however, a course of conduct shall not be considered to be separate and different violations merely because the conduct is repeated to more than one person. In addition, on the motion of the attorney general or its own motion, the court may impose a civil penalty of not more than five thousand dollars for each day of intentional violation of a temporary restraining order, preliminary injunction, or permanent injunction issued under authority of this section. A penalty imposed pursuant to this subsection is in addition to any penalty imposed pursuant to section 537.6113. Civil penalties ordered pursuant to this subsection shall be paid to the treasurer of state to be deposited in the general fund of the state.

*Id.*

Another statutory provision—the Older Iowans Act (OIA), Iowa Code section 714.16A—is also relevant here. The OIA augments the CFA. It provides, "If a person violates [the CFA], and the violation is committed against an older person [separately defined to mean anyone sixty-five or older], . . . the court may

impose an additional civil penalty not to exceed five thousand dollars for each such violation." *Id.* § 714.16A(1)(*a*), (3). The OIA also lists certain factors that courts must consider when "determining whether to impose" its additional civil penalty "and the amount of any such penalty." *Id.* § 714.16A(2).

In 2020, the attorney general commenced this civil CFA action against defendants Travis Autor, Regenerative Medicine and Anti-Aging Institutes of Omaha, LLC, and Omaha Stem Cells, LLC (defendants).[1] The attorney general's petition alleged that the defendants had violated the CFA and the OIA by engaging "in false, misleading, and deceptive conduct and unfair practices in the sale and advertisement of stem cell and exosome therapy in Iowa." In its introduction, the petition announced that "[t]his lawsuit . . . seeks a permanent injunction against Defendants to stop them from swindling additional Iowa victims; an order directing them to reimburse money [that] victims spent on bunk treatments and imposing civil penalties for their false, misleading, and deceptive conduct and unfair practices; and other relief." In its final pages, the petition provided a more specific list of remedies sought. Those remedies included (1) "a preliminary injunction restraining [d]efendants" and their agents "from engaging in any of the deceptive, misleading, and unfair practices alleged" in the petition; (2) a posttrial order "mak[ing] permanent the [preliminary] injunction[], expanding [its] provisions as necessary by including, *inter alia,* such 'fencing in' provisions as are reasonably necessary to ensure that [d]efendants . . . do not

---

[1]Other defendants were also named but they are not parties to this appeal.

return to the unlawful practices alleged" in the petition; (3) a judgment against the defendants "jointly and severally, for amounts necessary to restore to Iowans all money acquired by means of" violations of the CFA; (4) a judgment against the defendants "jointly and severally, for such additional funds as are necessary to ensure complete disgorgement of all ill-gotten gain traceable to the unlawful practices alleged"; (5) a civil penalty against each defendant "for up to $40,000.00 for each separate violation" of the CFA; and (6) an additional "civil penalty of up to $5,000.00" against each defendant under the OIA.

The defendants answered and demanded a jury. The attorney general moved to strike the jury demand. The motion explained that because subsection 714.16(7) requires that civil actions "shall be by equitable proceedings," the defendants are not entitled to a jury trial. Iowa Code § 714.16(7). The defendants responded that our constitution requires a jury trial because the attorney general was seeking substantial monetary remedies, including disgorgement beyond net profits, penalties of up to $40,000 per violation under the CFA, penalties of up to $5,000 per violation under the OIA, and joint and several liability. The district court granted the motion to strike. The defendants then applied for interlocutory review. We granted review and retained the case.

**II. Standards for Judicial Review.**

Because this case turns on the constitutionality of section 714.16(7)'s "equitable proceedings" requirement, our review is de novo. *State ex rel. Miller v. Pace,* 677 N.W.2d 761, 767 (Iowa 2004). There is a strong presumption that statutes are constitutional. "A party challenging a statute carries a heavy burden

of rebutting the presumption of constitutionality with which statutes are cloaked." *O'Hara v. State*, 642 N.W.2d 303, 314 (Iowa 2002) (finding no constitutional right to jury trial for actions classified as "special" rather than "civil"). "The party must negate every reasonable basis upon which the statute can be upheld as constitutional." *Id.* It is an "important and oft-repeated rule" that "no court is authorized to declare an act of the legislature invalid unless it is plainly, palpably, and beyond doubt repugnant to some provision of the constitution." *Littleton v. Fritz*, 22 N.W. 641, 646 (Iowa 1885) (evaluating alleged violation of article I, section 9).

**III. Analysis.**

**A. General Principles.** Article I, section 9 of the Iowa Constitution provides that "[t]he right of trial by jury shall remain inviolate." The words "shall *remain*" mean that the right protected is a right that existed when the constitution was adopted. *Littleton*, 22 N.W. at 643. At the time the constitution was adopted, a jury was available in actions at law, but not in a case "of equitable cognizance." *Id.* Put another way, there was not—and is not—a jury right for cases within the court's equitable jurisdiction. *See Hedlund v. State*, 930 N.W.2d 707, 718 (Iowa 2019) ("Generally, there is no right to a jury trial for cases brought in equity.").

The scope of the court's equitable jurisdiction is not immutable. *See Littleton*, 22 N.W. at 644 ("We are not, then, required to examine the laws in force at the time the constitution was adopted, and hold that in every case which was then triable by a jury, the right to such trial remains inviolate. Such a

construction of the constitutional provision involves too narrow a view of legislative power."). In our 1885 *Littleton v. Fritz* decision, we recognized that the legislature has power "to enlarge the jurisdiction of a court of equity." *Id.* at 645. We observed without criticism that—since the constitution's adoption—the legislature had removed the right to a jury in "actions for divorce" as well as "in case of the foreclosure of mortgages and mechanics' liens." *Id.* at 644.

At least one of our modern cases has quoted *Littleton* and confirmed that the "legislative power" includes a power to expand the range of cases tried without juries. *Iowa Nat'l Mut. Ins. v. Mitchell*, 305 N.W.2d 724, 728 (Iowa 1981) (en banc) (quoting *Littleton*, 22 N.W. at 644). And at least one distinguished federal judge has relied on *Littleton* for the proposition that "the Iowa legislature has some power to define the nature of a cause of action as equitable and therefore triable to the court rather than to a jury." *Gray v. Nash Finch Co.*, 701 F. Supp. 704, 709 (N.D. Iowa 1988). Other cases also support this view. *See, e.g.*, *Broulik v. Henderson*, 254 N.W. 63, 64–65 (Iowa 1934) (rejecting claim that article I, section 9 required a jury trial in action to collect the statutory assessment on shares of stock in a bank); *Clough v. Seay*, 49 Iowa 111, 113 (1878) (rejecting claim that article I, section 9 required a jury trial on issues of usury and improper alteration of a note). *But see McMartin v. Bingham*, 27 Iowa 234, 236 (1869) (finding defendant was entitled to jury trial in action on an account for legal services and disbursements made notwithstanding statute that provided that "when the trial of an issue of fact shall require the examination of mutual accounts, or when the account being on one side only, it shall be made

to appear to the court that it is necessary that the party on the other side should be examined as a witness to prove the account, in which case the referees may be directed to hear and report upon the whole issue, or upon any specific question of fact involved therein" (emphasis omitted) (quoting Iowa Code Revision of 1860 § 3090(1) (1860))).

Here we consider whether the legislature acted within its power when it required that civil CFA actions "shall be by equitable proceedings." The parties agree that the answer depends on the essential nature of the cause of action. *See Weltzin v. Nail*, 618 N.W.2d 293, 297 (Iowa 2000) (en banc) (rejecting contention that a jury trial was available in a shareholder derivative suit and noting that "[w]e look at the *essential nature* of the cause of action, rather than solely at the remedy, to determine if a party is entitled to a jury trial" (quoting *Carstens v. Cent. Nat'l Bank & Tr. Co. of Des Moines*, 461 N.W.2d 331, 333 (Iowa 1990))). Other states have made similar inquiries when determining whether a jury right exists for actions under their consumer protection statutes. *See* Karen K. Peabody, *Constitutional Right to Jury Trial in Cause of Action Under State Unfair or Deceptive Trade Practices Law*, 54 A.L.R. 5th 631 (1997) ("In a large number of cases, courts have reasoned that whether the right to a jury trial is granted depends upon the court's determination of the nature of the underlying claim."). And we think this kind of approach is consistent with our relevant caselaw.

*Broulik v. Henderson*, 254 N.W. 63, provides helpful guidance. In *Broulik*, the receiver of an insolvent bank brought an action against the bank's

stockholders "to collect the statutory assessment on the shares of stock." *Id.* at 64. Although the suit was obviously aimed at collecting money, the receiver brought the suit in equity. *Id.* This was authorized by a statute that said, in pertinent part, that the "receiver of any [insolvent bank] may maintain *an action in equity* to determine the liability of the stockholders, and the amount to which each creditor shall be entitled." *Id.* (emphasis added) (quoting Iowa Code § 9253 (1931)). But a shareholder argued that article I, section 9 entitled him to a separate trial at law. *Id.* In evaluating this argument, we distinguished prior cases that had not involved "statutory provisions permitting the actions to be brought in equity." *Id.* at 65. Instead, we believed that the proper test was this: "Unless a suit to determine the liability of a stockholder to an assessment *is inherently an action at law*, the statute is a sufficient warrant for the commencement of this action in equity and for its prosecution to final judgment in a court of equity." *Id.* (emphasis added). In applying this test, we noted that "determination of the necessity for an assessment and the amount thereof" would require a "complete examination" of the insolvent bank's "assets" and "liabilit[ies]." *Id.* These determinations, we said, were "quite generally regarded as the proper task of a court of equity, on account of the superiority of its procedure in such matters." *Id.* And so, we concluded, it "was competent for the Legislature to provide for the complete disposition of the litigation in equity." *Id.*

*Weltzin v. Nail*, 618 N.W.2d 293, is also helpful. There we considered whether a stockholder derivative action seeking damages from a former manager of the corporation was triable to a jury at the plaintiffs' request. *Id.* at 296. We

held it was not. *Id.* at 302–03. We noted that the stockholder derivative action did not exist at common law and that the plaintiffs' request for damages remedies was not determinative. *Id.* at 297. We also expressly rejected the federal Seventh Amendment approach that parsed stockholder derivative actions into legal and equitable components and afforded a jury trial on the legal components. *Id.* at 299–300. Instead, we focused on the "essential nature of the cause of action," which we deemed to be equitable. *Id.* at 297 (emphasis omitted) (quoting *Carstens*, 461 N.W.2d at 333).

**B. Application.** Applying *Broulik* and *Weltzin*'s approach here, we do not conclude that the CFA civil action is inherently an action at law. Rather, the essential nature of the action is equitable. Accordingly, we believe it was competent for the legislature to provide for "the complete disposition" of CFA civil actions through "equitable proceedings." *Broulik*, 254 N.W. at 65; *see* Iowa Code § 714.16(7).

Injunctive relief is at the center of CFA civil actions. Subsection 714.16(7) specifically authorizes three different kinds of injunctive relief: "a temporary restraining order," "preliminary injunction," and "permanent injunction." Iowa Code § 714.16(7). Another injunction-like power is also granted: "The court may make orders or judgments as necessary to prevent the use or employment by a person of any prohibited practices . . . ." *Id.* Moreover, on its own motion or the attorney general's, "the court may" enforce the injunctions "issued under authority of" section 714.16 by imposing "civil penalt[ies]" for "each day of intentional violation." *Id.*

These tasks—issuing and enforcing injunctions—invoke the court's equitable powers. *See Max 100 L.C. v. Iowa Realty Co.*, 621 N.W.2d 178, 181 (Iowa 2001) (en banc) ("Generally, the issuance of an injunction invokes the equitable powers of the court and courts apply equitable principles."); *see also, e.g.*, *Mitchell v. Robert De Mario Jewelry, Inc.*, 361 U.S. 288, 291–92 (1960) ("When Congress entrusts to an equity court the enforcement of prohibitions contained in a regulatory enactment, it must be taken to have acted cognizant of the historic power of equity to provide complete relief in light of the statutory purposes."); *State ex rel. Dep't of Ecology v. Anderson*, 620 P.2d 76, 78 (Wash. 1980) (en banc) ("Where a governmental body seeks to enjoin the commission of acts made illegal by statute, it is the court's equity jurisdiction that is invoked."). To paraphrase *Broulik*, injunctions are proper tasks of a court of equity. 254 N.W. at 65. This suggests that civil CFA actions are not "inherently . . . action[s] at law." *Id.*; *see State by Humphrey v. Alpine Air Prods., Inc.*, 490 N.W.2d 888, 895 (Minn. Ct. App. 1992), *aff'd*, 500 N.W.2d 788 (Minn. 1993) (en banc) (finding no jury right in consumer fraud and antitrust action and noting that "[i]njunctive relief is primarily equitable in nature").

Moreover, although subsection 714.16(7) *authorizes* monetary remedies like restoration and civil penalties, none of those remedies are mandatory. Subsection 714.16(7) does not mention damages or similar remedies that are typically available *as of right.* Nor does it say that any monetary remedies "must" or "shall" be awarded. Rather, subsection 714.16(7) says that "the court *may*"

order certain remedies.[2] And "may" suggests that the court has discretion. *See State v. Iowa Dist. Ct.*, ___ N.W.2d ___, ___, 2023 WL 3028128, at \*3 (Iowa Apr. 21, 2023) (noting that the legislature's "use of 'may' only 'confers a power' that is discretionary" (quoting Iowa Code § 4.1(30)(*c*) (2021))). In this regard, monetary remedies under subsection 714.16(7) are roughly analogous to spousal support under section 598.21A or domestic-abuse remedies under section 236.5(1)(*b*). In all three situations, the legislature's use of "may" suggests that the court has some latitude when weighing relevant circumstances and determining whether—and to what degree—statutorily-authorized remedies are appropriate. *See, e.g., In re Marriage of Mills*, 983 N.W.2d 61, 67 (Iowa 2022) ("Although we review claims related to spousal support de novo, 'we have emphasized that "we accord the trial court considerable latitude." ' " (quoting *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015))); *Fishel v. Redenbaugh*, 939 N.W.2d 660, 663 (Iowa Ct. App. 2019) (discussing the court's discretion as to awards of support in chapter 236 cases). This latitude suggests that CFA civil actions are equitable. *Gray*, 701 F. Supp. at 708–09 (finding "no constitutional right to a jury trial" as to emotional distress claim under Iowa Code section 601A.15(8) because relief was "discretionary and not a matter of right").

Finally, we note that "[t]he majority of courts . . . have held that no constitutional right to a jury trial arose under [their] state's unfair or deceptive trade practices act." Peabody, 54 A.L.R. 5th 631; *see also People v. Shifrin*,

---

[2]Likewise, the OIA says that "the court may impose" a civil penalty. Iowa Code § 714.16A(1)(*a*).

342 P.3d 506, 512 (Colo. App. 2014) (noting that "[t]he majority of courts in other jurisdictions have concluded that similar consumer protection actions are primarily equitable"). Several courts have found no jury-trial right even though their consumer protection acts permit financial consequences such as civil penalties, restitution, and even damages. *See, e.g.*, *Associated Inv. Co. Ltd. P'ship v. Williams Assocs. IV*, 645 A.2d 505, 510–11 (Conn. 1994) (finding no jury right for claims under a consumer protection act that authorized punitive damages and attorney fees); *Martin v. Heinold Commodities, Inc.*, 643 N.E.2d 734, 755 (Ill. 1994) (finding no jury right for claims under a consumer protection act that allowed recovery of money damages); *see also Alpine Air Prods., Inc.*, 490 N.W.2d at 895 (finding no jury right in consumer fraud and antitrust action in appeal following trial court award of $70,000 in civil penalties).

For example, the Nebraska Supreme Court has reasoned that because the "principal thrust" of Nebraska's consumer protection act is "to prevent unfair or deceptive acts or practices in trade or commerce," the Nebraska act "is equitable in nature, in the sense that it seeks to prevent prejudicial conduct rather than merely compensate such damage as may flow therefrom." *State ex rel. Douglas v. Schroeder*, 384 N.W.2d 626, 629–30 (Neb. 1986). And even though Nebraska's act "permits the recovery of an attorney fee, restoration of the purchase price, and the imposition of civil penalties," the Nebraska court concluded that those "monetary consequences" serve "to discourage future like acts and practices [and] are ancillary to the act's principal equitable thrust." *Id.* We think similar observations apply to Iowa's CFA and OIA. By authorizing monetary

consequences, these statutes advance equitable and remedial purposes, including protecting Iowans by encouraging compliance with the law. *See First Iowa State Bank v. Iowa Dep't of Nat. Res.*, 502 N.W.2d 164, 166 (Iowa 1993) (holding that environmental protection statute was properly considered remedial rather than penal and noting that its "civil penalty provision is essentially regulatory and intended to secure compliance with the statute"); *see also State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.*, 510 P.2d 233, 242 (Wash. 1973) (en banc) ("The legislature has wide discretion in the choice of remedies to promote compliance with a law, and providing for fines in a civil proceeding does not convert the proceeding to a criminal or penal one.").

**C. Counterarguments.** We have carefully considered all of the defendants' counterarguments. Although most of those arguments have been anticipated and addressed through what has already been said, we offer some additional comments here.

1. *Comparisons.* The defendants compare CFA civil actions with two classic "at law" actions: criminal anti-fraud prosecutions and common law tort suits. But CFA civil actions aren't like either of those. Since our 1974 decision in *Lenertz v. Municipal Court*, we've rejected the idea that the CFA is a criminal statute. 219 N.W.2d 513, 516 (Iowa 1974). And although the CFA has been amended since 1974, it still doesn't authorize criminal punishments like jail or prison. *Cf. Sarich v. Havercamp*, 203 N.W.2d 260, 268 (Iowa 1972) (finding the district court erred in refusing jury trial demand for contempt proceedings in which alleged contemptor "was exposed to a fine of $14,000 maximum or

imprisonment for a maximum term of 14 years"). And although the CFA is codified in the same part of the Iowa Code as criminal statutes, that doesn't change the civil and equitable nature of CFA actions. Consider *Littleton*, in which we upheld a provision that permitted citizens to "maintain an action *in equity* to abate and perpetually enjoin" the "nuisance" created by illegal saloons. 22 N.W. at 642 (emphasis added) (quoting Iowa Code § 1543 (McClain ed. Supp. 1884)). We upheld that provision even though it was codified *within* a statute that provided for the imprisonment of saloon keepers. *Id.* at 642–43.

Likewise, we have long held that CFA civil actions are not the same as common law fraud actions. *State ex rel. Miller v. Hydro Mag, Ltd.*, 436 N.W.2d 617, 622 (Iowa 1989) ("We conclude the Iowa Consumer Fraud Act was not merely a codification of common-law fraud. The Consumer Fraud Act provides broader protection to the citizens of Iowa by eliminating common-law fraud elements of reliance and damages."). Most importantly, perhaps, although successful tort plaintiffs are *entitled* to damages proven, the court has latitude when determining whether (and to what degree) remedies under the CFA and OIA are appropriate.[3]

---

[3]Subsection 714.16(11) is an exception. It provides that "[i]n an action brought under [section 714.16], the attorney general *is entitled to* recover costs of the court action and any investigation which may have been conducted, including reasonable attorneys' fees, for the use of this state." Iowa Code § 714.16(11) (emphasis added). In *State ex rel. Miller v. Fiberlite Int'l, Inc.*, we held that this language precluded any discretion to deny the State's request for "reasonable attorney fees and investigative costs incurred by the State in successfully prosecuting [a] consumer fraud action." 476 N.W.2d 46, 48 (Iowa 1991). But defendants do not argue—and we do not believe—that this changes the inherent nature of the CFA civil actions. If anything, this exception "proves the rule" that most CFA remedies are equitable and discretionary.

2. *Remedies.* The defendants' central theory is that because the monetary remedies available in CFA actions are legal, a jury must be available. We disagree for several reasons.

As discussed, we believe the jury right depends on the essential nature of the action and, more specifically, whether the cause of action is inherently legal. For the reasons explained, we conclude that the CFA civil action is not inherently legal. Rather, its essential nature is equitable.

As for the specific question of remedies: when we consider the remedies available under the CFA and the OIA as a whole, we believe they are equitable in character. Although the defendants say that some of those remedies (especially the civil penalties and disgorgement) are punitive, we look at them through a different lens. We agree with the attorney general that those remedies are aimed at equitable and remedial goals of making victims whole, extracting ill-gotten gains, and "protecting Iowa consumers" by encouraging compliance with the law. *See, e.g.*, *State ex rel. Miller v. Vertrue, Inc.*, 834 N.W.2d 12, 45 (Iowa 2013) (noting the OIA's "self-evident goal of protecting Iowa consumers who are vulnerable to unfair sales tactics because of their age").

Moreover, we have generally declined to parse the remedies sought to see if some of them might be characterized as legal. We've made it plain that "[t]he fact that an action seeks monetary relief does not necessarily define the action as one at law." *Carstens*, 461 N.W.2d at 333; *see Hedlund*, 930 N.W.2d at 718 (same). Rather, Iowa law recognizes that "[o]nce equity has obtained jurisdiction of a controversy[,] the court will determine all questions material or necessary to

accomplish full and complete justice between the parties, even though in doing so the court may be required to pass upon certain matters ordinarily cognizable at law." *Weltzin*, 618 N.W.2d at 298 (quoting *In re Marriage of Stogdill*, 428 N.W.2d 667, 670 (Iowa 1988)). Or, to put it more simply, "[e]quity may determine all matters both legal and equitable when the controversy is properly before it." *Id.* (quoting *Grandon v. Ellingson*, 144 N.W.2d 898, 901 (Iowa 1966)). So even if some of the CFA's remedies were properly classified as legal, the court could still award them under its authority to "determine all questions material or necessary to accomplish full and complete justice between the parties." *Id.* (quoting *In re Marriage of Stogdill*, 428 N.W.2d at 670).

Indeed, even if we were to characterize CFA or OIA remedies as *punitive*, this would not prevent an equity court from awarding them. In *Weltzin,* we held that "punitive damages" are "within the purview of the equity court." *Id.* at 300. In *Holden v. Construction Machinery Co.*, we confirmed that—even without actual damages—"an equity court may, in its discretion, award exemplary damages upon a showing that some legally protected right has been invaded, such as an intentional act of fraud or other wrongful conduct." 202 N.W.2d 348, 359 (Iowa 1972). In *Charles v. Epperson & Co.*, "[w]e [held] that an equity court may in its discretion award exemplary damages for an intentional act of fraud." 137 N.W.2d 605, 618 (Iowa 1965). The court may do so "to punish the wrongdoer and set an example." *Id.*

3. *Joint and several liability.* We have also considered the defendants' complaint that—in this particular case—the attorney general seeks joint and

several liability. As the defendants note, though, the phrase "joint and several" does not appear in section 714.16(7) or the OIA. And we consider it an open question as to whether joint and several liability is available as to the remedies authorized in section 714.16(7) or the OIA. *But cf. State ex rel. Miller v. Fiberlite Int'l, Inc.*, 476 N.W.2d 46, 48 (Iowa 1991) (reversing and remanding for entry of judgment of attorney fees and costs under section 714.16(11) "joint and several against all defendants"). Assuming it is, though, it would not change the result here. We are not convinced that joint and several liability is inherently incompatible with equitable jurisdiction. *Compare FTC v. Com. Planet, Inc.*, 815 F.3d 593, 600 (9th Cir. 2016) ("Equity courts have long exercised the power to impose joint and several liability, most notably in cases involving breach of the duties imposed by trust law."), *abrogated on other grounds by AMG Cap. Mgmt., LLC v. FTC*, 141 S. Ct. 1341 (2021), *and* 4 John Norton Pomeroy, *A Treatise on Equity Jurisprudence* § 1081, at 231–32 (5th ed. 1941) (noting the "firmly settled" rule that multiple trustees can be "liable jointly and severally" for a breach of trust), *with Liu v. SEC*, 140 S. Ct. 1936, 1945 (2020) ("Equity courts also generally awarded profits-based remedies against individuals or partners engaged in concerted wrongdoing, not against multiple wrongdoers under a joint-and-several liability theory.").

4. *Irrelevance of injunctive relief.* The defendants also suggest that even if CFA civil actions are *generally* compatible with equity, *this* case isn't because the defendants are already out of business and, therefore, injunctive relief is irrelevant. We disagree. First, we do not think that the constitutionality of the

legislature's "equitable proceedings" command should turn on whether the defendants claim to have stopped their allegedly unlawful actions. Rather, we think the analysis should turn on the inherent nature of CFA civil actions as codified. And, as codified, the CFA civil action is largely centered on enjoining misconduct, a traditional function of equity.

Moreover, in this particular case, the attorney general has sought—and continues to seek—injunctive relief. And by its plain terms, the statute permits injunctive relief whenever it appears "a person *has engaged in*, is engaging in, or is about to engage in" unlawful practices. Iowa Code § 714.16(7) (emphasis added). So the defendants' claim that they have given up their allegedly-unlawful business is immaterial. The attorney general may seek an injunction based on the defendants' alleged prior misconduct.

5. *Federal jurisprudence.* Finally, we have considered the defendants' argument that a jury might be required under the federal courts' Seventh Amendment jurisprudence. It is undisputed, however, that the Seventh Amendment does not apply to states. *Savala v. State*, 982 N.W.2d 667, 670 (Iowa 2022); *Channon v. United Parcel Serv., Inc.*, 629 N.W.2d 835, 852 (Iowa 2001). And in *Weltzin*, we chose "not to extend the Supreme Court's holding in relation to the Seventh Amendment to shareholder's derivative suits brought in Iowa." *Weltzin*, 618 N.W.2d at 300. Likewise, we decline to rely on federal precedents here. We believe Iowa's own precedents strike an appropriate balance between the legislative power under article III of the Iowa Constitution and the jury right preserved under article I, section 9 of the Iowa Constitution.

**IV. Additional Issues.**

The defendants raise two additional issues. First, the defendants suggest that *even if* we determine that CFA actions should be tried in equity (as we have), we should limit the remedies available. Specifically, the defendants suggest we should refuse to allow the attorney general to pursue civil penalties, disgorgement of gross receipts (rather than just profits), and joint and several liability. We disagree. For the reasons explained, we do not believe that the remedies available under the CFA or the OIA are inherently incompatible with equitable proceedings. So we see no basis to limit those remedies at this stage. Of course, as in any equity case, our review of any final order would be de novo. *See, e.g.*, *Vertrue, Inc.*, 834 N.W.2d at 45.

Finally, the defendants suggest that even if we enforce the CFA's requirement of equitable proceedings, we should require bifurcation. Specifically, the defendants suggest that we require a jury to determine liability and then permit a judge to determine remedies. We disagree. The Code plainly requires "equitable proceedings" for civil CFA actions. Iowa Code § 714.16(7). The Code does not authorize a jury's involvement in any phase of a civil CFA action. And we do not believe that the constitution prohibits us from enforcing the CFA as written.

**V. Caveat.**

It is important to recognize that this opinion only addresses the cause of action available to *the attorney general* under section 714.16. A separate provision—that is not at issue in this case—permits *consumers* to "bring an

action at law to recover actual damages" as well as "equitable relief" under the CFA. Iowa Code § 714H.5(1). Nothing we have said in this opinion applies to this separate private cause of action.

**VI. Conclusion.**

The district court was right to strike the defendants' jury demand. We affirm and remand for further proceedings.

**AFFIRMED AND REMANDED.**